UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-cr-31 (ADM/KMM) |
| Plaintiff, | |
| v. | **ORDER** |
| ABDIWELI MOHAMED JAMA, | |
| Defendant. | |

This matter is before the Court on the parties' pretrial motions. Because of the COVID-19 pandemic, the hearing was held by video conference via Zoom, by Mr. Abdiweli Mohamed Jama's consent. The Court issues the following Order resolving these motions.

1. **The Government's Motion for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3, and 26.2 [ECF No. 43]**

The Government seeks discovery and disclosure as required by several provisions of the Federal Rules of Criminal Procedure. Mr. Jama does not object to the government's motion. The motion is **GRANTED** to the extent that Mr. Jama shall provide discovery as required by the applicable provisions of the Rules. Further, the government expert discovery shall provide any expert witness disclosures **no later than four weeks prior to trial**. Mr. Jama shall provide any expert witness disclosures **no later than three weeks prior to trial**.

The Court and counsel discussed the status of discovery in this matter. The government represented that it has turned over written statements covered by the Jencks Act, and although it has withheld recorded Jencks statements thus far, counsel for the

1

government indicated that he will disclose those materials to defense counsel well before trial to avoid any unnecessary delays. The government also indicated that, to the extent it has not done so already, it will provide all *Brady* and *Giglio* materials as required by the case law. Finally, the government's counsel clarified that he does not currently have underlying DNA testing documentation or expert ballistics analysis, but those materials will be disclosed to the defense upon request once they are available. The Court appreciates the government's near-total open-file approach to discovery in this matter and the cooperation of counsel.

### 2. Mr. Jama's Motion to Suppress Statements [ECF No. 35]

Mr. Jama moved to suppress statements made to law enforcement officers. However, the parties reached an agreement regarding the government's use of the relevant statements in its case-in-chief. [ECF No. 45]. The parties confirmed during the hearing that their stipulation rendered the motion to suppress statements moot.

### 3. Mr. Jama's Motion to Sever Charges [ECF No. 36]

Finally, Mr. Jama moves for an order severing Counts 1 and 2 from Count 3. Because the Court denies this motion, the Court has assumed without deciding that the relevant facts contained in Mr. Jama's motion are correct. Even with such an assumption, the arguments made by Mr. Jama do not carry the day.

Counts 1 and 2 arise from an attempted armed robbery at the Market BBQ restaurant in Minneapolis on November 9, 2020. Police responded to a report of a shooting at the restaurant and spoke with B.K., who had been wounded by the gunfire. B.K., an employee of the restaurant, was working at the front counter when the suspect approached him and pulled a gun from his parka. Before the suspect said anything, B.K. lunged at the suspect and

struggled with him. During the struggle, the gun went off. Hearing the struggle, another employee approached and attempted to punch the suspect and put him in a choke hold. At that point, the suspect got up and fled through the front door. A swab of a pistol found by law enforcement at the scene included a mixture of DNA from four individuals; although the second Market BBQ employee was excluded, analysis could not exclude B.K. or Mr. Jama as contributors to the mixture.

Count 3 concerns a robbery at a Speedway gas station in St. Michael, Minnesota, on November 11, 2020, two days after the Market BBQ robbery. The store clerk, A.D., told the police that she was working the register when the suspect approached to purchase a beverage. He went out to his car to grab his wallet and then came back in the store. The suspect walked behind the counter and told A.D. to give him the money in the cash register. The suspect had his hand in his pocket holding something that appeared like the outline of a gun. A.D. told the suspect that she could not open the safe. The suspect grabbed approximately $141, cigarettes, and lottery tickets, and then left the store. Witnesses were able to provide law enforcement with a plate number for the vehicle the suspect used to leave the scene. When officers located a vehicle matching the description, the driver, later identified as Mr. Jama, attempted to flee but was apprehended after a car chase. Officers found evidence in the vehicle, including cigarettes and lottery tickets, and Mr. Jama had $138 in cash on his person. He was arrested and taken into custody.

### **Properly Joined Offenses**

In relevant part, Federal Rule of Criminal Procedure 8 provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or

>misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). Here, the Court finds Counts 1, 2, and 3 are properly joined under Rule 8(a). They concern conduct that is of the same or similar character because they refer to the same type of offense occurring in a short period of time. *See United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994) (describing proper bases for joinder). In Counts 1 and 2, the indictment charges Mr. Jama with armed robbery at the Market BBQ on November 9, 2020. Count 3 charges Mr. Jama with an armed robbery at the Speedway in St. Michael two days later. *See United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996) (finding three separate armed bank robberies were properly joined where two took place on the same day and the other occurred less than two months later). Moreover, although defense counsel argued otherwise in his briefing, he conceded that the offenses were properly joined for Rule 8 purposes during the hearing.

### Discretion to Sever Counts – Rule 14

Under Rule 14, however, even if counts are properly joined in the first instance, they could nonetheless require severance. "If the joinder of offenses … appears to prejudice a defendant or the government, the court may order separate trials of counts … or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Rule 14(a) gives the district court discretion in determining whether properly joined counts should be severed. *United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011). "There is a strong presumption against severing properly joined counts." *Id.* at 626.

A defendant seeking severance bears the burden of establishing that joining counts in a single trial would be prejudicial. *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992). The Eighth Circuit explains that prejudice may be found where a "jury might use evidence of one crime to infer guilt on the other or … the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately." *Davis*, 103 F.3d at 676. "On the other hand, a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." *Id.* However, the mere possibility that a defendant could have a "better chance of acquittal in separate trials" does not mean that joinder is unfairly prejudicial. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Mr. Jama argues that if the Market BBQ counts are severed from Count 3 charging the Speedway robbery, evidence of each offense would likely not be admissible under Federal Rule of Evidence 404(b), meaning that he would have an appreciably better chance at acquittal if the counts are severed. He concedes that the evidence implicating him in the Speedway incident is much stronger than the evidence related to the Market BBQ robbery and suggests that he would be prejudiced because, in a joint trial, the evidence could be cumulated against him, leading to potentially improper conviction for Counts 1 and 2.

Mr. Jama's argument for severance thus hinges on his assertion that in separate trials, evidence regarding each of the charged robberies would be inadmissible under Rule 404(b). The Eighth Circuit has held that joinder is appropriate where "evidence of each offense would have been admissible under Rule 404(b) to prove the other in separate trials." *Garrett*, 648 F.3d at 625. Rule 404(b) allows the use of a prior crime, wrong, or other act to prove

5

"motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The Court finds that, contrary to Mr. Jama's position, evidence regarding Count 3 would likely be admissible in the trial on Counts 1 and 2, and vice versa. Of course, if the charges in this case were tried separately, Judge Montgomery would ultimately determine the question of whether evidence of one incident would be allowed in the trial of the other, and this Court's predictive analysis should not be taken as an intrusion on Judge Montgomery's province in evaluating the admissibility of evidence. Nevertheless, at this stage and for the following reasons, the Court cannot conclude that severance is appropriate because the evidence of each incident would be inadmissible under Rule 404(b) in a separate trial. It is not clear what the theory of Mr. Jama's defense to each incident will ultimately be. He may argue that the government cannot prove that he was the perpetrator of the Market BBQ incident, and indeed, he has suggested an alibi with respect to that incident. Thus, evidence of the Speedway incident may be admissible in a separate trial on the Market BBQ robbery under Rule 404(b) to show identity or modus operandi. Likewise, Mr. Jama's briefing suggests a theory of defense for the Market BBQ incident focused on contesting intent. He has emphasized that B.K. lunged at the suspect before the suspect said anything or pointed the gun at B.K. Thus, Mr. Jama may argue that the government cannot establish that, even if he was indeed the suspect in the Market BBQ incident, he intended to commit a robbery at all. In response to such a defense, the government would show that evidence of the Speedway incident is admissible under Rule 404(b) to demonstrate intent—i.e., the government could demonstrate that the Speedway incident happened so soon after the

6

Market BBQ incident and in such a similar manner, that a lack-of-intent defense is simply not credible. Given the arguable admissibility of evidence of each offense at a trial for the other, Mr. Jama cannot demonstrate that severance would lessen the perceived disadvantage of a joint trial.

Moreover, Mr. Jama has not cited any case, and the Court's own research has located none, where a court has granted a defendant's motion to sever counts that charge two or more armed robberies committed within a fairly short period of time, that involve reasonably similar facts or circumstances, and that reasonably implicate a single defendant. Although the Court can imagine a case where the conduct involved in one robbery was so extreme that severance might be justified, this is not such a case.

### Order or R&R

Courts within this district appear to be split on whether a motion for severance should be considered "dispositive," and therefore subject to *de novo* review of a magistrate judge's ruling, or "nondispositive," and thus subject to review for clear error. *See United States v. Perrin*, No. 17-CR-0026 (WMW/DTS), 2017 WL 3278847, at *1 (D. Minn. Aug. 1, 2017) (quoting *United States v. Montanari*, No. 14–0161, 2014 WL 4541120, at *1 n.1 (D. Minn. Sept. 11, 2014) (comparing cases in which motion to sever is deemed nondispositive and cases in which motion to sever is deemed dispositive)); *see also United States v. McConnell*, No. 13-cr-273 (SRN/FLN), 2017 WL 111304, *3 (D. Minn. Jan. 11, 2017) (concluding that a motion for severance is nondispositive and citing cases). The undersigned Magistrate Judge has addressed this motion for severance in an Order, given that it is not one of the motions specifically excepted from a magistrate judge's determination under 28 U.S.C. § 636(b)(1)(A).

However, the undersigned recognizes that the District Court will be in the best position to assess whether evidence regarding one of the charged incidents would be admissible in a separate trial of the other under Federal Rule of Evidence 404(b). Moreover, the name attached to this decision —"Order" instead of "Report and Recommendation"—should not preclude Mr. Jama from arguing that a *de novo* standard of review should be applied on any appeal or objection from this decision. Nor could this Court's choice to call its decision an "Order" tie the hands of the District Court in determining what standard of review is applicable to any appeal or objection that may be forthcoming.

    For these reasons, the motion is **DENIED**.

Date: October 4, 2021

                                                     *s/Katherine Menendez*
                                                   Katherine Menendez
                                                   United States Magistrate Judge