## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Criminal No. 21-31 (ADM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE |
| | ) | TO DEFENDANT'S MOTION |
| v. | ) | TO VACATE, SET ASIDE OR |
| | ) | CORRECT SENTENCE |
| ABDIWELI MOHAMED JAMA, | ) | PURSUANT TO 28 U.S.C. § 2255 |
| | ) | |
| Defendant. | ) | |

Defendant Abdiweli Mohamed Jama robbed a gas station and attempted to rob a restaurant, gravely injuring an employee in the process. Jama pleaded guilty to two federal offenses and received a below-range sentence of 144 months. Jama has filed a timely motion and supporting memorandum under 28 U.S.C. § 2255, alleging his counsel was ineffective in a variety of ways. Doc. Nos. 84, 85. His claims lack merit and should be denied. There is no need for an evidentiary hearing on this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Jama's Offenses

In November 2020, Jama attempted to rob the Market Bar-B-Que restaurant in Minneapolis. PSR ¶ 8. Victim B.K. was working at the host station when Jama walked in and pulled a gun out of his jacket. *Id*. B.K. lunged at Jama and tried to take the gun from him. *Id*. During the ensuing struggle, B.K. was shot in his knee and shoulder. *Id*. While searching the restaurant,

officers located a loaded semi-automatic .40 caliber pistol, shell casings, Jama's surgical mask, and a blood-spattered shirt worn by a witness who attempted to aid B.K. PSR ¶ 10. DNA testing positively identified Jama's DNA on the shirt, mask, and pistol. PSR ¶ 11.

Two days after the Market Bar-B-Que incident, Wright County Sheriff's deputies responded to a robbery of a Speedway gas station. PSR ¶ 12. The suspect stole $218 from the store, as well as cigarettes and lottery tickets. *Id*. The deputies quickly identified Jama's car and attempted to stop it, but Jama sped away. PSR ¶ 13. When the deputies caught up with Jama, they found the stolen cash and merchandise in his car. *Id*.

## II. Plea, Sentencing, and Appeal

In February 2021, a grand jury charged Jama with one count of Attempted Interference with Commerce by Robbery and one count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence for the Market Bar-B-Que offenses, and one count of Interference with Commerce by Robbery for the robbery of the gas station. Doc. No. 1. Jama was detained pending trial. Doc. No. 23. At that point in the COVID-19 pandemic, individuals in pretrial detention had limited contact with their attorneys, and used telephone calls or Zoom sessions for most communications.

Jama was originally represented by appointed counsel, but eventually hired his own attorney, Adrian LaFavor-Montez, to represent him. Doc. Nos. 14,

29. LaFavor-Montez assessed the case and soon filed motions to suppress Jama's statements and sever the counts of the Indictment. Doc. Nos. 35, 36. Before the Court ruled on the former motion, LaFavor-Montez prevailed on the government not to use "any statements made by the Defendant" during a police interview, except as impeachment material should Jama testify at trial. Doc. No. 45; LaFavor-Montez Aff. (Doc. No. 100) ¶ 10. However, the magistrate judge recommended denying Jama's motion to sever the counts. *See* Doc. No. 47.

While litigating pretrial motions, LaFavor-Montez also negotiated a plea agreement with the government. LaFavor-Montez Aff. ¶¶ 12-24. The negotiations involved multiple drafts, and efforts to work with the Court and government about the timing of trial in an effort to allow Jama enough time to consider his options. *Id.*; *see also* Exs. 1-8 to LaFavor-Montez Aff. All told, Jama spent about five months deciding whether to plead guilty or proceed to trial, as the attorneys exchanged various proposals and drafts of plea agreements. *Id.*

Eventually, Jama pleaded guilty to Attempted Interference with Commerce by Robbery and Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence, the two counts related to the Market Bar-B-Que robbery. Doc. No. 54 at 1. He admitted as part of his plea that he caused the victim, B.K., permanent or life-threatening bodily injuries, which resulted in a six-level increase to his offense level pursuant to U.S.S.G. § 2B3.1(b)(C)(3). Doc. No. 54 at 3. Despite the severity of Jama's

offenses, the government committed to recommending a downward variance from 46 to 57 months of imprisonment to 24 months of imprisonment for Count 1, to be followed by a consecutive 120-month sentence for Count 2. Doc. No. 54 at 4-5. That concession came after LaFavor-Montez presented extensive mitigating evidence to the government. LaFavor-Montez Aff. ¶¶ 33-36.

Although the government committed itself to argue for a 24-month term on Count 1, Jama was not so bound. He preserved the right to argue for a sentence as low as 120 months. Doc. No. 56 at 5. LaFavor-Montez filed a detailed sentencing position focused on mitigation, and letters of support from Jama's family. Doc. No. 63 at 3-11; Doc. No. 65.

Jama appeared for sentencing in April 2022. LaFavor-Montez and Jama both addressed the Court and spoke extensively on mitigation. Sent. Tr. (Doc. No. 78) at 5-10, 13-15. Ultimately, this Court imposed a 144-month sentence, in line with the government's recommendation. The Court explained that Jama engaged in a "crime spree" that required "more than the mandatory minimum." *Id.* at 16, 17. However, the Court also recognized Jama's family support and difficult personal history at the sentencing hearing. *Id.* at 2-3.

Jama appealed his sentence, arguing his below-range prison term was unreasonable. *United States v. Jama*, 2023 WL 3090634 (8th Cir. Apr. 26, 2023). The Eighth Circuit affirmed the sentence, explaining that the district

court fairly considered his substance-abuse problems and the difficulties of finding treatment during the pandemic. *Id*. at *1.

## III. Jama's § 2255 Motion

Jama filed a timely § 2255 motion and supporting memorandum in December 2023. Doc. Nos. 84, 85. Jama's numerous claims of ineffective assistance of counsel are broken into the pretrial, sentencing, and appellate phases of the proceedings. Doc. No. 84 at 4-8. As to pretrial proceedings, Jama argues LaFavor-Montez failed to "inform him of the relevant circumstances and likely consequences of pleading guilty," did not file "substantive pretrial motions," failed to "conduct an adequate and independent pretrial investigation," and failed to negotiate a "favorable Plea Agreement" with the government. Doc. No. 84 at 4. Jama claims LaFavor-Montez was ineffective at sentencing because he did not "properly discuss and explain the PSR," failed to "file substantive objections to the PSR," and failed to present mitigating evidence at sentencing. *Id*. at 5. Lastly, Jama claims LaFavor-Montez was ineffective on appeal because he did not keep Jama apprised of the appellate issues to be raised or allow Jama to participate in the appeal, and because the issues in the brief were not strong enough for "meaningful appellate review." *Id*. at 6.

Although not enumerated in his motion, *see* Doc. No. 84, Jama also raises an argument related to *United States v. Taylor*, 596 U.S. 845 (2022), in his

supporting memorandum. Doc. No. 85 at 27-30. The government, as detailed in a separate motion, respectfully requests the Court issue a supplemental briefing schedule so the government can continue to investigate that issue. This memorandum will therefore not address *Taylor*, focusing instead on Jama's enumerated claims of ineffective assistance of counsel. Doc. No. 84 at 4-8.

## ARGUMENT

Jama's allegations about his former attorney lack merit and the Court should deny his motion. His memorandum and affidavit fail to demonstrate either deficient performance or prejudice from his attorney, which is "fatal to an ineffective-assistance claim." *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013) (citation omitted). Because none of Jama's arguments provides a basis for relief and the record amply supports the attorney's performance, there is no need for an evidentiary hearing on this matter, nor should the Court issue a certificate of appealability.

## I.    Legal Standard

A federal prisoner may move under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence if it was imposed in violation of federal laws "or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant bears the burden of proof to establish that his sentence must be vacated. *Cassidy v. United States*, 428 F.2d 585, 587 (1970). To prevail on his numerous ineffective-

assistance claims, Jama must show that his attorney's performance fell below standards of reasonable professional assistance and that he was prejudiced by his counsel's actions. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Keys v. United States*, 545 F.3d 644, 646 (8th Cir. 2008). A movant's challenges must raise a "fundamental defect which results in a complete miscarriage of justice," *Davis v. United States*, 417 U.S. 333, 346 (1974), and establish that his counsel's deficient performance rendered the proceedings fundamentally unfair or unreliable. *El-Tabech v. Hopkins*, 997 F.2d 386, 389 (8th Cir. 1993). However, "judicial scrutiny of counsel's performance must be highly deferential," and there is a "strong presumption" of competence. *Strickland*, 466 U.S. at 689. In addition, defendants "cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted).

A criminal defendant's Sixth Amendment right to competent legal representation "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), citing *Missouri v. Frye*, 566 U.S. 134 (2012). If an attorney provided accurate information about the government plea offer to his client, the defendant satisfies the "prejudice" requirement by showing "that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial."[1] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Frye*, 566 U.S. at 148 (reaffirming standard set forth in *Hill*); *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014); *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

To establish prejudice in the sentencing context, a defendant must show a reasonable probability that, but for his attorney's errors, he would have received a lesser sentence than he did. *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (citing *Puckett v. United States*, 556 U.S. 129, 142 n. 4 (2009)). "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Claims of ineffective assistance of appellate counsel are also tested under the *Strickland* standard. Notably, however, "the right to appellate representation does not include a right to present frivolous arguments to the court." *Smith v. Robbins*, 528 U.S. 259, 272 (2000). As a result, "effective appellate counsel should not raise every nonfrivolous argument on appeal, but

---

[1] A different framework applies when a defendant proceeds to trial after a defense counsel misadvises a defendant about the nature of a plea agreement, or where a defendant takes a less favorable plea offer after an attorney fails to inform him of an earlier plea offer. *See Lafler*,566 U.S. at 170-71 (discussing remedies available to courts); *Frye*, 566 U.S. at 148-50 (explaining how to make a showing of *Strickland* prejudice if counsel fails to communicate a plea offer altogether). Because Jama does not allege his counsel misadvised him about the nature of the agreement or failed to communicate an offer, this memorandum does not address those issues.

rather only those arguments most likely to succeed." *Davila v. Davis,* 582 U.S. 521, 533 (2017) (declining to allow claim for ineffective assistance of appellate counsel when procedurally defaulted in first habeas motion). Indeed, a defendant does not even have "a constitutional right to compel appointed counsel to press *nonfrivolous* points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (emphasis added). Thus, both the performance and prejudice standards are "rigorous" for appellate counsel. *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008). A defendant must establish "the result of the [appellate] proceeding would have been different" but for the appellate counsel's alleged error. *Brown*, 528 F.3d at 1033 (quoting *Becht v. United States*, 403 F.3d 541, 546 (8th Cir. 2005).

## II. Jama's Pretrial Claims Lack Merit Because His Attorney Was Not Ineffective and He Suffered No Prejudice.

### A. LaFavor-Montez Competently Advised Jama on the Relative Merits of Trial Versus a Guilty Plea.

Jama claims LaFavor-Montez did not advise him on the "likely consequences of pleading guilty as opposed to proceeding to trial." Doc. No. 84 at 4. His allegation is somewhat unclear, but he states that LaFavor-Montez "persistent[ly] push[ed] for a guilty plea," "made no preparations or attempts to develop a trial defense strategy," and was hindered by the requirement to use telephone or Zoom to communicate. Doc. No 85 at 16-17. Jama alleges

prejudice resulted because he had "two unpalatable options – proceeding to trial or accepting the plea deal," and that his counsel was unfamiliar with the facts and procedures relevant to his case. *Id.* at 17, 18.

There was no deficient performance here. Faced with overwhelming evidence against Jama, LaFavor-Montez candidly advised his client on the "advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quotation omitted). As LaFavor-Montez states, "I provided numerous options to Mr. Jama, but I refused to make his decision for him." LaFavor-Montez Aff. ¶ 27. Far from pushing Jama toward a guilty plea, LaFavor-Montez worked with the government and the Court to ensure Jama had many months to consider the various plea offers. LaFavor-Montez Aff. ¶¶ 12-24; Exs. 1-8 to LaFavor-Montez Aff. Finally, the fact that LaFavor-Montez was prepared to take the matter to trial disproves Jama's assertions that he was "push[ed]" to plead guilty. Doc. No. 85 at 16. In sum, LaFavor-Montez's Affidavit, related exhibits, and the record all disprove Jama's argument that he was somehow strongarmed by his attorney.

Likewise, Jama's argument about a lack of trial strategy is meritless. In fact, LaFavor-Montez developed a trial strategy and several back-up strategies as the case went on. His pretrial motions reflect some of his efforts to narrow the evidence against Jama and separate the case into two trials to increase the odds of an acquittal. *See* Doc. Nos. 35, 36. LaFavor-Montez's declaration

provides additional context and detail, including a plan to suppress Jama's statement, "sever the charges, and, if successful, to file a Rule 404(b) motion to exclude the [gas station robbery]. LaFavor-Montez Aff. ¶ 7. As the case went on, LaFavor-Montez reformulated and refined his approach. LaFavor-Montez Aff. ¶¶ 15, 23, 28.

Lastly, Jama's claims about the difficulties of communication fall flat. While the COVID-19 pandemic made all criminal matters more difficult, the use of Zoom and telephone are not a basis to find an attorney constitutionally ineffective. Moreover, despite the logistical challenges LaFavor-Montez spoke with Jama (and Jama's family) regularly while the case was pending. LaFavor-Montez Aff. ¶¶ 3, 16, 17.

Even if Jama could establish deficient performance – and he cannot – there was no prejudice here. First, all criminal defendants face the same "unpalatable options" Jama describes. Doc. No. 85 at 17. That is not prejudice. In this case, LaFavor-Montez represented a client who committed serious offenses, leaving one victim with lifelong injuries. PSR ¶¶ 8-11. The evidence against Jama was overwhelming, including DNA and victim testimony for the first, and Jama's apprehension with stolen money and merchandise after the second. *Id*. Nevertheless, LaFavor-Montez ensured Jama had ample time to consider his options and worked with Jama in the challenging pandemic environment. Had Jama proceeded to trial, the likelihood of a conviction was

extremely high. There is almost no possibility that Jama would have received prison term of 144 months in that scenario, so he cannot establish prejudice under *Hill*.

## B. Jama's Counsel Filed Appropriate Pretrial Motions.

Jama claims that his attorney failed to file "any substantive pretrial motions." Doc. No. 84 at 4. In his supporting memorandum, he specifies that LaFavor-Montez failed to file "a Request for Rule 404(b) [evidence]" and "a Motion for *Brady*/*Giglio* Material." Doc. No 84 at 19. Here again, his claim is contradicted by the record in this case. In fact, Jama's LaFavor-Montez *did* file substantive pretrial motions, namely a motion to sever counts and a motion to suppress evidence. Doc. Nos. 35, 36. Indeed, LaFavor-Montez even convinced the government to voluntarily refrain from using Jama's statements against him. Doc. No. 45; LaFavor-Montez Aff. ¶ 29. There was no deficient performance here.

The fact that LaFavor-Montez did not file a motion requesting *Brady*/*Giglio* material or Rule 404(b) evidence does not change the analysis. As to Rule 404(b), had the case gone to trial Jama would have had ample opportunity to litigate the substance and admissibility of any Rule 404(b) material the government may have offered, because the rule requires "reasonable notice" in writing prior to trial of the evidence the government intends to offer, as well as explanation of its "permitted purpose." Fed. R. Evid.

404(b)(3)(A)-(C). Similarly, the government's *Brady* and *Giglio* disclosure obligations are strict, and were already the subject of an order pursuant to the Due Process Protection Act as well as discussion at the pretrial motions hearing. Doc. No. 20 at 1; Doc. No. 47 at 2 (noting the government stated it has turned over *Brady* and *Giglio* material and would continue to do so). The record in this case establishes there was no deficient performance and no prejudice in this case.

## C. Jama's Counsel Conducted an Adequate Investigation.

Jama next claims that LaFavor-Montez did not investigate the case independently. He claims that LaFavor-Montez "did not engage in legal research, interview witnesses, or scrutinize [the] facts" of the offenses, and should have hired a private investigator. Doc. No. 85 at 22. To meet his burden on this type of claim, Jama must establish there was evidence or exculpatory information that LaFavor-Montez could have discovered through further investigation. *Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997). In addition, the purported undiscovered evidence must be sufficient to undermine confidence in the result of the case. *Payne v. United States*, 78 F.3d 343, 348 (8th Cir. 1996). Jama does not do so, nor could he. Merely speculating about such evidence is not enough. *See Anderson v. Kelley*, 938 F.3d 949, 959 (8th Cir. 2019) (speculation about unoffered expert testimony on fetal alcohol syndrome insufficient to show *Strickland* prejudice); *Saunders v. United*

*States*, 236 F.3d 950, 953 (8th Cir. 2001); *Sanders v. Trickey*, 875 F.2d 205 (8th Cir. 1989) (defendant cannot show *Strickland* prejudice when he merely speculates about interviewing a witness but produces no affidavit to show what she would have testified). Jama presents nothing more than an unsupported allegation about deficient investigation, so the Court should deny this claim.

### D. LaFavor-Montez Competently Negotiated Jama's Plea Agreement.

Lastly, Jama argues LaFavor-Montez did not "negotiate a favorable Plea Agreement" for him. Doc. No. 84 at 4. By alleging ineffective assistance at the plea stage, Jama must show that, but for his counsel's deficient performance, he would have gone to trial instead of accepting a plea. *Hill*, 474 U.S. at 59; *see also Dat v. United States*, 920 F.3d 1192, 1195 (8th Cir. 2019) (had defendant been properly advised of immigration consequence of plea, he would have gone to trial). Jama ignores the standard *Hill* prescribes. Instead, he invents his own standard: he claims LaFavor-Montez "failed to make an offer to the government [that] Jama would accept in the Plea offer." Doc. No. 85 at 23. In other words, Jama appears to believe his counsel had the power to craft a plea offer for the government to consider. But a defendant has no right to a plea agreement at all, much less a plea agreement the defendant proposes to the government. *Missouri v. Frye*, 566 U.S. 134, 148-49 (2012); *Weatherford v.*

*Bursey*, 429 U.S. 545, 561 (1977). Jama's claim runs contrary to established precedent and should be denied.

In fact, Jama's counsel worked assiduously to obtain a favorable plea agreement for his client. LaFavor-Montez Aff. ¶¶ 12-24. LaFavor-Montez negotiated various versions of the plea agreement, as explained in the Affidavit and corroborated by the Exhibits to the Affidavit. LaFavor-Montez Aff. ¶¶ 12-24; Exs. 1-8 to LaFavor-Montez Aff. Jama cannot show that LaFavor-Montez's work "fell below an objective standard of reasonableness." *United States v. Regenos*, 405 F.3d 691, 693 (8th Cir. 2005) (quotation omitted). To the contrary, LaFavor-Montez negotiated an advantageous agreement that limited the government's arguments and sentencing while preserving the maximum flexibility for Jama. The Court should decline to engage in second-guessing about the performance of LaFavor-Montez with respect to the plea negotiation.

Nor was there any prejudice. Again, the plea agreement shows LaFavor-Montez achieved a significant victory for his client in that the government agreed in the plea agreement to recommend a sentence below the Guidelines range. Doc. No. 54 at 4-5. Such situations are rare, and the result in this case reflects LaFavor-Montez's hard work on behalf of his client. Had Jama gone to trial, there would be no reasonable probability that the government would have recommended a below-range sentence. Therefore, he cannot meet the standard articulated in *Hill*, and his claim fails.

### III. Jama Received Competent Assistance During Sentencing.

Jama claims LaFavor-Montez was ineffective at sentencing because he did not "properly discuss and explain the PSR," failed to "file substantive objections to the PSR," and failed present mitigating evidence at sentencing.[2] Doc. No. 84 at 5. Jama does not supply detail about his PSR allegations, such the portions of the PSR he did not understand, or the objections LaFavor-Montez should have filed. Instead, he argues that LaFavor-Montez should have "raise[d] how the incident happened." That is a "conclusory allegation[] unsupported by specifics" and should be rejected out of hand. *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quotation omitted). Further, it is readily contradicted by the record. LaFavor-Montez supplied a lengthy acceptance-of-responsibility statement, PSR ¶¶ 18-22, to provide detailed factual context as to how Jama came to commit the offenses. It would be nearly impossible for LaFavor-Montez to guide Jama toward such a fulsome acceptance-of-responsibility statement if he had not spent time analyzing the details of the PSR and advising his client about its importance. Moreover, LaFavor-Montez's Affidavit describes the PSR process, which included several meetings and conversations during which Jama did not appear to have any

---

[2] Jama's *Taylor* arguments are found in the sentencing portion of his memorandum. Doc. No. 85 at 27-30. However, and as explained above, the government intends to address them separately.

questions and agreed not to "nit-pick" with objections so as to avoid a strong case for acceptance of responsibility. LaFavor-Montez Aff. ¶¶ 39, 40.

Second, Jama claims LaFavor-Montez did not present evidence in mitigation at sentencing. Here again, his allegations are readily contradicted by the record. First, LaFavor-Montez filed a detailed sentencing position focused on mitigation. Doc. No. 63 at 3-11. Second, he filed letters of support and other mitigation materials for Jama. Doc. No. 65. Finally, the majority of his arguments at the sentencing hearing were focused on mitigation. Sent. Tr. (Doc. No. 78) at 5-10. His work paid off. The Court acknowledged all these materials at sentencing, noted the "tragic" nature of the case, and imposed a below-range sentence. *Id*. at 2-3, 15. In every respect, LaFavor-Montez competently represented Jama at sentencing. There was no deficient performance and no prejudice here.

## IV. Jama's Counsel Pursued Sound Strategy on Appeal and Did Not Render Deficient Representation.

Jama's final claim is that his counsel was ineffective on appeal. Doc. No. 84 at 6. Jama argues LaFavor-Montez "failed to maintain open lines of communication with Jama" and did not allow Jama "to actively participate" in the appeal, leading to presentation of allegedly weak claims in the defense brief. Doc. No. 85 at 32, 33. While defendants have the "ultimate authority" to decide *whether* to pursue an appeal, they do not determine the precise claims

to raise on appeal. *Jones*, 463 U.S. at 751. Review of appellate counsel's performance is "particularly deferential" where, as here, a defendant argues "counsel failed to raise an additional issue on direct appeal." *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013). "[A]bsent contrary evidence" a court assumes that when appellate counsel does not raise a claim, it was "an exercise of sound appellate strategy." *Brown*, 528 F.3d at 1033 (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)).

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible . . . ." *Jones*, 463 U.S. at 751. Therefore, "the appellate advocate examine[s] the record with a view to selecting the most promising issues for review," keeping in mind restrictions like page limits, time limits on oral argument, and other rules promulgated by courts of appeals. *Id.* at 752-53. Here, LaFavor-Montez assessed there was a single viable issue to present on appeal – the reasonableness of Jama's sentence. LaFavor-Montez Aff. ¶ 52. Having done so, LaFavor-Montez explained to Jama the limitations on what may be presented to an appellate court: "the only issue that could be raised on appeal was that the sentence of the District Court was an abuse of discretion" and "[he] could not dispute facts on appeal" after entering an unconditional guilty plea. LaFavor-Montez Aff. ¶ 53. Put differently, Jama's former attorney engaged in the precisely the kind of "winnowing" contemplated in *Jones*.

Limiting the issues on appeal was not ineffective lawyering; it was sound appellate practice. *Jones*, 463 U.S. at 751. Once again, the *Strickland* inquiry ends because there was no deficient performance.

Jama argues that because he and LaFavor-Montez allegedly did not communicate enough during the appellate phase, LaFavor-Montez "ignored issues [that] were unequivocally stronger than those presented" in the brief. Doc. No. 85 at 33. As an initial matter, LaFavor-Montez states that the two did speak at least twice about the content of the appeal. LaFavor-Montez Aff. ¶¶ 52, 53. However, Jama claims that if Jama had more input, LaFavor-Montez would have "challenge[d] the clerk's assertion that Jama never declared his intent to rob him." *Id.* In other words, Jama wanted his attorney to challenge the underlying facts of his offense on appeal, a claim that would have been foreclosed by his plea. *E.g. United States v. Beck*, 250 F.3d 1163, 1166-67 (8th Cir. 2001) (defendant pleading guilty admits the facts and elements of offense). There is no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones*, 463 U.S. at 751. There was no deficient performance here, and certainly no prejudice. On this record, and given the exceedingly deferential standard applied to claims of ineffective assistance of appellate counsel, Jama's argument fails.

## V.     There Is No Basis For An Evidentiary Hearing

To substantiate a § 2255 claim, a movant is entitled to an evidentiary hearing unless the record conclusively establishes that he may not obtain any relief. *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014). When considering a § 2255 motion, a court may hold an evidentiary hearing. *See* 28 U.S.C. § 2255(b). A hearing is not required, however, when "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (citation and internal quotation marks omitted). Here, each of Jama's allegations are contradicted by record or inherently incredible. The Court should decline to hold a hearing and deny Jama's motion.

## VI.     This Court Should Not Issue a Certificate of Appealability.

A certificate of appealability is issued in § 2255 proceedings only if the applicant has made a substantial showing of the denial of a constitutional right and has indicated which specific isspue or issues satisfy the showing required. *See* 28 U.S.C. § 2253(c)(2) & (3). Further, "the petitioner 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [differently]; or that the questions are adequate to deserve encouragement to proceed further.'" *Randolf v. Kemna*, 276 F.3d 401, 403 n. 1

(8th Cir. 2002) (internal citations omitted). Jama does not meet that standard here, so the Court should decline to issue a certificate of appealability in this case.

Dated:  February 29, 2024

Respectfully submitted,
ANDREW M. LUGER
United States Attorney

*s/ Katharine T. Buzicky*

BY:  KATHARINE T. BUZICKY
Assistant U.S. Attorney
Attorney ID No. 671031MA