UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

v.

Abdiweli Mohamed Jama,

       Defendant.

MEMORANDUM OPINION
AND ORDER
Criminal No. 21-31 ADM/HB
Civil No. 23-3757 ADM

_____

Katharine T. Buzicky, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Abdiweli Mohamed Jama, pro se.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Abdiweli Mohamed Jama's ["Jama"] Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 84].[1] For the reasons set forth below, the Motion is granted in part and denied in part.

## II. BACKGROUND

In November 2020, Jama attempted to rob the Market Bar-B-Que restaurant in Minneapolis, Minnesota. Presentence Investigation Report ("PSR") [Docket No. 60] ¶ 8. An employee working at the front desk observed Jama walk in and pull a pistol from his jacket. Id. The employee lunged at Jama in an attempt to take the pistol. Id. During the struggle over the pistol, the employee was shot in his knee and shoulder. Id. Jama fled the store on foot, dropping a surgical mask at the scene. Id. When searching the restaurant, officers found a loaded semi-

---

[1] All citations are to the criminal case docket.

automatic pistol, shell casings, and a blood-spattered shirt worn by a witness who tried to aid the employee.  Id. ¶ 10.  DNA testing positively identified Jama's DNA on the pistol, mask, and shirt.  Id. ¶ 11.

Two days after the Market Bar-B-Que shooting, Wright County Sheriff's deputies responded to a report of a robbery at a Speedway gas station.  Id. ¶ 12.  Upon their arrival, a gas station employee told a deputy that the suspect entered the store and demanded money from the register, and that the suspect had his hand in his pocket in a way suggesting that he had a gun.  Id.  The suspect stole $218 from the store, as well as cigarettes and lottery tickets.  Id.  The deputies spotted Jama's car nearby and attempted to initiate a traffic stop, but Jama sped away and a high-speed chase ensued.  Id. ¶ 13.  The chase ended when Jama crashed his vehicle a short distance later.  Id.  The deputies found the stolen cash and merchandise in Jama's car.  Id.

In February 2021, Jama was charged by Indictment with attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 1) and using a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii)-(iii) (Count 2) for the Market Bar-B-Que offenses, and with Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 3) for the Speedway robbery.  Indictment [Docket No. 1].  Jama was detained pending trial.  Detention Order [Docket No. 23].  Due to the status of the COVID-19 pandemic, individuals in pretrial detention had limited contact with their attorneys and used telephone calls or Zoom meetings for most communications.

Jama was initially represented by appointed counsel, but later hired Adrian LaFavor-Montez to represent him.  See Docket Nos. 14, 29.  LaFavor-Montez filed a motion to suppress statements made by Jama during a police interview, and a motion to sever the counts of the Indictment.  See Pretrial Mots. [Docket Nos. 35, 36].  Prior to a hearing on the motions, the

Government agreed not to use Jama's statements against him, except for impeachment should Jama testify at trial. See Letter [Docket No. 45]; LaFavor-Montez Aff. [Docket No. 103] ¶ 29. The magistrate judge denied Jama's motion to sever the counts. See Order [Docket No. 47]; LaFavor-Montez Aff. ¶ 11.

LaFavor-Montez negotiated a plea agreement with the Government. LaFavor-Montez Aff. ¶¶ 12-26, 33-36. The negotiations included several different proposals and multiple drafts of the plea agreement. Id. Exs. 1, 3, 4, 5, 7, 8. Jama spent about five months deciding whether to plead guilty or proceed to trial. Id.

On November 16, 2021, Jama entered a plea of guilty to attempted Hobbs Act robbery (Count 1) and using a firearm in connection with a crime of violence (Count 2). Min. Entry [Docket No. 52]; Plea Agreement [Docket No. 54]. In the Plea Agreement, Jama admitted that he caused the Market Bar-B-Que employee permanent or life-threatening bodily injuries. Plea Agreement ¶¶ 2, 5(b). The Government agreed that it would recommend a downward variance from 46-57 months of imprisonment to 24 months of imprisonment for Count 1, followed by the consecutive mandatory minimum 120-month sentence for Count 2. Id. ¶ 5(k). The Plea Agreement also stated that Jama could seek a further downward variance for Count 1. Id. The resulting sentencing range of 120-144 months under the Plea Agreement was well below the sentencing guidelines range of 166-177 months. LaFavor-Montez Aff. ¶¶ 35-36; Plea Agreement ¶ 5(h).

On April 7, 2022, Jama appeared for sentencing. Min. Entry [Docket No. 67]; Sentencing J. [Docket No. 68]. Prior to the sentencing hearing, LaFavor-Montez filed a detailed sentencing memorandum, letters of support, and other mitigation materials. Sentencing Mem. [Docket No. 63]; Letters and Other Sentencing Materials [Docket No. 65]. At the hearing,

LaFavor-Montez focused his arguments on mitigation and discussed Jama's experience as a child in a refugee camp, his being separated from his parents and raised by his grandmother, his grandmother's death in 2020, his addiction to drugs, and his efforts to seek treatment for his addiction. Sentencing Tr. [Docket No. 78] at 5-10. The Court recognized Jama's difficult personal history, but explained that Jama had engaged in a "crime spree" that had jeopardized the lives of others, and that "more than the mandatory minimum" of 120 months was required to reflect the seriousness of the offenses. Id. at 2-3, 16, 17. The Court imposed a term of 24 months on Count 1 and a mandatory consecutive term of 120 months on Count 2, for a total sentence of 144 months. Sentencing J. at 2.

Jama appealed his below-guidelines sentence as substantively unreasonable. United States v. Jama, 2023 WL 3090634 (8th Cir. Apr. 26, 2023). The Eighth Circuit affirmed the sentence, holding that this Court did not abuse its discretion when weighing the § 3553(a) sentencing factors. Id. at *1.

Jama now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He argues he received ineffective assistance of counsel during the pretrial, sentencing, and appellate phases of his case. The Government has filed a Response [Docket No. 101] arguing that these claims lack merit and should be denied.

Although not an enumerated claim in his 2255 Motion, Jama argues in his supporting memorandum that his § 924(c) conviction on Count 2 must be vacated based on United States v. Taylor, 596 U.S. 845 (2022). See Mem. Supp. 2255 Mot. [Docket No. 85] at 27-30. In Taylor, the Supreme Court held that attempted Hobbs Act robbery does not satisfy the elements clause of § 924(c), and thus no longer can serve as a predicate crime of violence for a § 924(c) conviction. Taylor, 596 U.S. at 851-52.

The Government has filed a Supplemental Response [Docket No. 106] agreeing that vacating Count 2 is appropriate under Taylor because Jama's conviction on Count 1 for attempted Hobbs Act robbery does not qualify as a predicate crime of violence for his § 924(c) conviction on Count 2. The Government requests that Jama be resentenced on Count 1 to ensure that his sentence remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

### III.  DISCUSSION

#### A.  Legal Standards

##### 1.  28 U.S.C. § 2255

Persons in federal custody are provided a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of their sentence under 28 U.S.C. § 2255. See United States v. Addonizio, 442 U.S. 178, 185 (1979). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." Walking Eagle v. United States, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

##### 2. Ineffective Assistance of Counsel

"To establish ineffective assistance of counsel within the context of section 2255 . . . a movant faces a heavy burden." Apfel, 97 F.3d at 1076. A defendant must show that "(1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance." Pierce v. United States, 686 F.3d 529, 531 (8th Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

5

To satisfy the deficient performance prong of this two-part test, a defendant must show that counsel's errors were not the result of a "reasonable professional judgment."  Strickland, 466 U.S. at 690.  In doing so, the defendant runs up against a strong presumption "that counsel . . . rendered adequate assistance."  Id.  To meet the prejudice prong, the defendant must prove, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

**B. Jama's Claims**

    **1. Ineffective Assistance of Counsel During Pretrial Stage (Ground One)**

In Ground One, Jama argues that he received ineffective assistance of counsel during the pretrial stage of his case.  Jama claims his counsel: 1) failed to engage in meaningful communication with him and inform him of the likely consequences of pleading guilty versus going to trial; 2) failed to file substantive pretrial motions; 3) failed to conduct an adequate pretrial investigation which could have uncovered crucial evidence in Jama's favor; and 4) was negligent during plea negotiations by not negotiating a favorable plea agreement on Jama's behalf.

All of these claims are squarely contradicted by the record.  Regarding his attorney's communications, Jama stated under oath during his change of plea hearing that he was satisfied with his attorney's advice and felt he'd had enough time to talk with his attorney about his case.  Plea Tr. [Docket No. 80] at 6-7.  Indeed, from the time LaFavor-Montez was retained until the time Jama pleaded guilty, Jama met with his attorney over Zoom seventeen times and spoke with him two to three times per week over the phone.  LaFavor-Montez Aff. ¶ 3.  Jama's attorney informed him of the relevant circumstances and likely consequences of pleading guilty versus going to trial, and discussed trial strategy with him.  Id. ¶¶ 4-8.

With respect to pretrial motions, Jama's attorney filed appropriate pretrial motions and succeeded in convincing the Government not to use Jama's statements against him. Although Jama claims that his attorney should have filed a motion requesting Brady/Giglio material and Rule 404(b) evidence, such motions were not required because the Government was already obligated to provide Brady/Giglio material, and Jama would have had ample opportunity to litigate the substance and admissibility of any Rule 404(b) material had he proceeded to trial.

As to the adequacy of counsel's pretrial investigation, Jama does not provide examples of evidence that could have been discovered through further investigation. See Otey v. Grammer, 859 F.2d 575, 578 (8th Cir. 1988) (holding burden is on petitioner to show what additional evidence counsel could have discovered that would have helped the defense). As such, Jama has not shown that he was prejudiced by his counsel's allegedly inadequate investigation of his case.

Regarding plea negotiations, the record shows that Jama's attorney competently and effectively represented him and obtained a favorable plea agreement for Jama. After negotiating multiple versions of the plea agreement, Jama's counsel prevailed upon the Government to recommend a sentence well below the guidelines range.

Based on this record, Jama cannot show that his counsel "failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney," or that Jama was prejudiced by his attorney's performance. Pierce, 686 F.3d at 531. Accordingly, relief premised on Ground One is denied.

**2. Ineffective Assistance of Counsel During Sentencing (Ground Two)**

In Ground Two, Jama claims that his attorney was ineffective at sentencing because he failed to properly discuss and explain the PSR, failed to file objections to the PSR, and failed to present mitigating evidence at sentencing.

7

The record shows that Jama's attorney reviewed and discussed the PSR's contents with him at least twice. LaFavor-Montez Aff. ¶¶ 38-40. Jama does not provide details about the portions of the PSR he did not understand or the objections his attorney should have filed. Instead, he argues that his attorney should have "raise[d] how . . . the incident happened." Mem. Supp. 2255 Mot. at 27. This conclusory allegation is not sufficient to establish that his attorney's performance was deficient during the PSR process. See Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) ("[T]he principle of liberal construction will not save [a pro se petitioner's] pleadings if they are based on conclusory or non specific factual allegations.").

Jama's claim that his attorney failed to present mitigation evidence at sentencing is contradicted by the record. Jama's counsel filed a detailed sentencing position focused on mitigation, as well as letters of support and other mitigation materials. At the sentencing hearing, most of the arguments presented by Jama's attorney focused on mitigation. The Court acknowledged Jama's mitigation evidence during the sentencing hearing and imposed a below-guidelines sentence.

Because Jama has not shown that he received ineffective assistance of counsel during sentencing, any relief based on Ground Two is denied.

**3. Ineffective Assistance of Counsel on Appeal (Ground Three)**

In Ground Three, Jama claims that his attorney was ineffective on appeal. Jama argues that his attorney failed to adequately communicate with him and did not allow him to provide input about the issues and arguments that would be raised on appeal.

Review of appellate counsel's performance "is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." Charboneau v. United States, 702 F.3d 1132, 1136 (8th Cir. 2013). "Experienced advocates since time beyond

8

memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible . . . ." Jones v. Barnes, 463 U.S. 745, 751 (1983). "[A]bsent contrary evidence," a court "assume[s] that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting Roe v. Delo, 160 F.3d 416, 418 (8th Cir.1998)).

Jama's attorney spoke with him at least twice to discuss the strategy for his appeal. LaFavor-Montez Aff. ¶¶ 48-53. Jama claims that his attorney was deficient for "fail[ing] to challenge the clerk's assertion that Jama never declared his intent to rob him." Mem. Supp. 2255 Mot. at 33. However, any attempt by Jama to challenge the underlying facts of his offense on appeal would have been foreclosed by his plea. See, e.g., United States v. Beck, 250 F.3d 1163, 1166–67 (8th Cir. 2001) (holding that by pleading guilty, a defendant admits the facts and elements of his offense). Counsel's decision to winnow out this weak argument on appeal reflects sound appellate strategy and does not constitute deficient performance. Ground Three relief is also denied.

### 4. Conviction under 18 U.S.C. § 924(c) (Count 2)

Jama next argues that pursuant to the Supreme Court's decision in United States v. Taylor, 596 U.S. 845 (2022), his conviction for attempted Hobbs Act robbery (Count 1) no longer qualifies as a predicate crime of violence for his conviction under § 924(c) (Count 2). In Taylor, the Supreme Court held that, unlike *completed* Hobbs Act robbery, "*attempted* Hobbs Act robbery does not satisfy the elements clause" of § 924(c)(3)(A) because "it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." Taylor, 596 U.S. at 851 (emphasis in original). The Government concedes that under Taylor, Jama's conviction for attempted Hobbs Act

9

robbery no longer qualifies as a predicate crime of violence for his § 924(c) conviction, and that vacating Count 2 is appropriate. Supplemental Response at 1-2.

The Court finds that Jama's § 924(c) conviction is no longer lawful based on Taylor.[2] Accordingly, the Court will apply the sentencing package doctrine to "vacate the entire sentence on all counts . . . [and] reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." United States v. Dennis, 81 F.4th 764, 769 (8th Cir. 2023) (quoting Greenlaw v. United States, 554 U.S. 237, 253 (2008)). The sentencing package doctrine is typically applied in cases such as this where a defendant is convicted of multiple crimes and successfully challenges one of the convictions based on an intervening Supreme Court case. See, e.g., id.; United States v. McArthur, 784 F. App'x 459, 461 (8th Cir. 2019) (per curiam); United States v. Cree, No.12-26(4) JRT/JSM, 2021 WL 859669, at *2 (D. Minn. Mar. 8, 2021). Under the doctrine, the "district court may impose a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed." Dennis, 81 F.4th at 769-70 (quotation marks and alterations omitted).

Counsel shall be appointed to represent Jama during his resentencing.

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not warranted, as the 2255 Motion and the files and record in this case conclusively show that Jama is not entitled to § 2255 relief on his claims that he received ineffective assistance of counsel. 28 U.S.C. § 2255(b); Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010).

---

[2] "Taylor applies to all cases 'pending on direct review or not yet final' as of June 21, 2022, the day the Court decided Taylor." United States v. Dennis, 81 F.4th 764, 769 n.1 (8th Cir. 2023) (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Jama's case was pending on direct appeal on the day Taylor was decided.

## V. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised by this § 2255 Motion differently, or that any of the issues raised by Jama's § 2255 Motion would be debatable among reasonable jurists. Thus, the Court declines to grant a certificate of appealability.

## VI. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Abdiweli Mohamed Jama's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 84] is **GRANTED** as to Count 2 and **DENIED** as to Count 1;

2. Jama's conviction for Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii) (Count 2) is **VACATED**;

3. The Court will resentence Jama in person as soon as is practicable; and

4. The Federal Defender's Office is instructed to appoint an attorney to represent Jama during resentencing.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
Dated: July 17, 2024          ANN D. MONTGOMERY
                              U.S. DISTRICT JUDGE