RECEIVED BY MAIL

SEP 2 5 2025

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

ABDIWELI MOHAMED JAMA
    (petitioner-defendant)

v.

                                   Case No: 21-CR-0031
                                   Honorable Ann D. Montgomery

UNITED STATES OF AMERICA
    (respondent-plaintiff)

MEMORANDOM OF LAW IN SUPPORT OF MOTION FILED UNDER 28 U.S.C. 2255

Comes now, Abdiweli Mohamed Jama ("petitioner"), files this memorandum of law to this honorable Court in support of the claims presented in the motion filed under 28 U.S.C. Section 2255, based on ineffective assistance of counsel. In support thereof, petitioner respectfully avers the following:

I. BACKGROUND OF THE CASE

In November 2020, petitioner attempted to rob the Market Bar-B-Que restaurant in Minneapolis, Minnesota. (see Presentence Investigation Report, Doc. No. 60, para. 8). An employee working at the front desk saw the petitioner and lunged at petitioner in an attempt to take the pistol. Id. During the struggle over the pistol, the employee was shot in his knee and shoulder. Petitioner fled the store on foot. Petitioner was apprehended two days later by Wright County deputies who responded to the report of robbery at Speedway gas station.

In February 2021, petitioner was charged by Indictment with attempted Hobbs Act robbery in violation of



SCANNED
SEP 2 5 2025
U.S. DISTRICT COURT MPLS.

18 U.S.C. 1951 (Count 1) and using a firearm in connection with a crime of violence in violation of 18 U.S.C. 924(c)(1)(A) (count 2) for the Market Bar-B-Que offenses, and with Hobbs Act robbery in violation of 18 U.S.C. 1951 (count 3) for the Speedway robbery. (Docket No. 1).

## II. BACKGROUND OF THE PROCEEDINGS

Petitioner hired Adrian LaFavor-Montez ("counsel") to represent him. (Doc. No. 14, 29). Counsel filed a motion to suppress statements made by petitioner during a police interview and motion to sever counts of the indictment. (Doc. No. 35, 36). The government agreed to not using the statements at trial and the motion to sever was denied by the court. Later, counsel negotiated a plea agreement with the government following several negotiations, which included several different proposals and multiple drafts of plea agreement. (Doc. No. 103, Exs. 1, 3, 4, 5, 7, 8). Petitioner spent about five months deciding whether to plead guilty or proceed to trial. Id.

On November 16, 2021, petitioner entered a plea of guilty to attempted Hobbs Act robbery (Count 1) and using a firearm in connection with a crime of violence (Count 2). During the pela colloquy, the parties assumed that petitioner was a naturalized United States citizen, which was further confirmed by the PSR prepared by the probation department. While the court was informed that petitioner was born in Somalia and lived in a refugee camp in Kenya before immigrating to the United States, counsel did not inquire to the citizenship status of petitioner at any time. As a result, both the plea agreement and the plea colloquy did not include any warnings as to any immigration consequences of the guilty plea.

On April 7, 2022, petitioner appeared for sentencing hearing, where counsel argued for mitigation and discussed petitioner's experience as a child in a refugee camp, his being separated from his parents and raised by his grandmother, his grandmother's death in 2020, his addiction to drugs, and his efforts to seek treatment for his addiction. (Doc. No 78, Sentencing Tr. at 5-10). This court imposed a term of 24 months on Count 1 and a mandatory consecutive term of 120-months on Count 2, for a total sentence of 144 months. Petitioner appeal to his sentence was affirmed by the Eighth Circuit Court of Appeals on

April 26, 2023. See United States v. Jama, 2023 U.S. App. LEXIS 10120, 2023 WL 3090634 (8th Cir Apr. 26, 2023).

Petitioner subsequently filed a motion to vacate under 28 U.S.C. 2255. (Doc. No. 84). On July 17, 2024, this court granted the motion in part and vacated petitioner's 18 U.S.C. 924(c) conviction on Count 2 based on the Supreme Court's decision in United States v. Taylor, 596 U.S. 845 (2022). In Taylor, the Court held that attempted Hobbs Act robbery does not satisfy the elements clause of 924(c) and thus no longer can serve as a predicate crime of violence for a 924(c) conviction. Taylor, 596 U.S. at 851-52. Petitioner was resentenced to a 88-month term of imprisonment on December 17, 2024.

Following resentencing, Petitioner was transferred to FCI Allenwood Low, White Deer, Pennsylvania in 2025. On July 15, 2025, the Department of Homeland Security ("DHS"), served petitioner a Notice to Appear ("NTA") alleging that petitioner is not a citizen of the United States (either through birth or through naturalization), and should be deported to Somalia due to his conviction for aggravated felony under 8 U.S.C. Sections 1227(a)(2)(A)(iii) and 8 U.S.C. 1101(a)(43). (See EXHIBIT A; Copy of NTA.)

III. INEFFECTIVE ASSISTANCE OF COUNSEL: Applicable Legal Standards

To establish a claim for ineffective assistance of counsel, a petitioner must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" Walking Eagle v. United States, 742 F.3d 1079, 1082 (8th Cir 2014) ((quoting Strickland V. Washington, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," Lafler v. Cooper, 566 U.S. 156, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. Strickland, 466 U.S. at 687.

Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." Donnell v. United States, 765 F.3d 817, 821 (8th Cir 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." Holder v. United States, 721 F.3d 979, 994 (8th Cir 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Lafler, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." Mayfield v. United States, 955 F.3d 707, 712 (8th Cir 2020) (citing Missouri v. Frye, 566 U.S. 134, 143-47 (2012). The two-part Strickland inquiry "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). Therefore, movant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different. Lockhart, 474 U.S. at 57.

In the plea context, the movant must show "there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial. Id at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quotations omitted).

## IV. THE INSTANT PETITION IS NOT SECOND OR SUCCESSIVE

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal inmate seeking relief under 28 U.S.C. Section 2255 must first receive certification from the court of appeals to file a second or successive motion. In Magwood v. Patterson, 561 U.S. 320 (2010), the Supreme Court held that a subsequent petition under 28 U.S.C. Section 2254 after an initial petition resulted in resentencing was not "second or successive." The Eighth Circuit has stated the Magwood rule clearly: "If there is a new sentencing between two habeas petitions, a subsequent habeas application challenging the new judgment is not successive." Collins v. United States, No. 19-2321, 822 Fed. Appx 509, 2020 U.S. App. LEXIS 29987, 2020 WL 5626152, at*1 (8th Cir Sept 21, 2020) (per curiam).

The Eighth circuit has also held that Magwood applies to motions brought pursuant to Section 2255. See, Dyab v. United States, 855 F.3d 919, 923 (8th Cir 2017) ("import[ing] Magwood's inquiry about entry of a new judgment to the 2255 context."). Other courts have similarly imported Magwood's inquiry about the entry of a new judgment to the 2255 context. E.g., Johnson v. United States, 623 F.3d 41, 45 (2nd Cir 2010). The inquiry is "whether a district court has entered a new, intervening judgment." Id. For a 2255 motion, "it is well established that 'the sentence is the new judgment.'" Id. quoting Berman v. United States, 302 U.S. 211, 212 (1937).

The Eighth circuit's decision in Collins provides additional guidance. In Collins, the movant's initial 2255 motion was granted in part and the court entered an amended judgment. The movant then filed another 2255 motion "asserting claims concerning both his attorney in the original criminal proceedings and his attorney for the first section 2255 proceedings." Collins, 822 Fed. Appx at 510, 2020 U.S. App. LEXIS 29987, 2020 WL 5626152, at *1. The District court dismissed the motion on the grounds that it was an unauthorized successive motion.

The Eighth Circuit, however vacated the district court's dismissal, and remanded for further proceedings. Id.

Movant's amended judgment issued on December 17, 2024, where the court resentenced him to 88 months imprisonment, is a new sentence. Therefore this 2255 motion is not second or successive. Grounds one through three in the current motion concern initial counsel's ineffective assistance as to the guilty plea, which can be challenged following the entry of an amended judgment.

GROUND 1

INEFFECTIVE ASSISTANCE OF COUNSEL:
Failure to advise petitioner of Immigration Consequences of guilty plea

The Sixth Amendment guarantees "the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984). To establish ineffective assistance during plea negotiations, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." Lee v. United States, 137 S.Ct. 1958, 1964 (2017) (quoting Strickland, 466 U.S. at 688). The defendant "bears the burden to overcome the strong presumption that counsel's performance was reasonable." Thomas v. United States, 737 F.3d 1202, 1207 (8th Cir 2013).

Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." White v. Dingle, 757 F.3d 750, 752 (8th Cir 2014) (quoting Strickland, 466 U.S. at 687). Defense attorneys "have a duty to inform clients about the possible immigration consequences of pleading guilty in order to provide effective counsel under the Sixth Amendment." Barajas v. United States, 877 F.3d 378, 380 (8th Cir 2017), (citing Padilla v. Kentucky, 559 U.S. 356, 374 (2010)).

Unreasonableness may be established if the defense attorney failed to "inform clients about the possible immigration consequences of pleading guilty." United States v. Dat, 920 F.3d 1192, 1194 (8th Cir 2019) (quoting Barajas, 877 F.3d at 380). See United States v. Bonilla, 637 F.3d 980, 984 (9th Cir 2011) (stating that a "criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty."). See generally, Padilla, 559 U.S. at 369 ("When the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.").

In Padilla v. Kentucky, the Supreme Court held that when advising a criminal defendant about the consequences of pleading guilty, "counsel must inform the client whether his plea carries a risk of deportation," and that

failure to do so is subject to analysis under Strickland. 559 U.S. at 374. The Court also recognized that "preserving the right to remain in the United States may be more important to the client than any potential jail sentence." id at 368. The Court reasoned that:

> changes to our immigration law have dramatically raised the stakes of a
> noncitizen's criminal conviction. The importance of accurate legal advice
> for noncitizens accused of crimes has never been more important. These
> changes confirm our view that, as a matter of federal law, deportation is
> an integral part - indeed, sometimes the most important part - of the
> penalty that may be imposed on noncitizen defendants who plead guilty
> to specified crimes.

Padilla, 559 U.S. at 364 (footnote omitted).

In Padilla, the Supreme Court emphasized that counsel must advise the defendant that "his conviction would make him 'deportable' under 8 U.S.C. 1227(a)(2)(B)(I) if he pleaded guilty, not that deportation or removal was either mandatory or certain." United States v. Ramirez-Jimenez, 907 F.3d 1091, 1094 (8th Cir 2019) (per curiam). Cf, Chaidez v. United States, 568 U.S. 342, 345-46 (2013) (stating that under Padilla, "criminal defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas."). The Immigration and Nationality Act (INA) is "succinct, clear, and explicit" about the removal consequence for aggravated felonies. Padilla, 559 U.S. at 368. See 8 U.S.C. 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. 1229b(a)(3) (an alien "convicted of any aggravated felony is not eligible for cancellation of removal); Chaidez, 568 U.S. at 345 (aggravated felony conviction subjects a lawful permanent resident to "mandatory removal").

In instant case, the counsel did not provide the petitioner any advice as to the deportation consequence of his plea to an aggravated felony. Under the specific facts of this case, this court can conclude that the deportation-related repercussions of petitioner's guilty plea, namely, mandatory deportation, should have been apparent to a reasonably competent attorney, and petitioner's attorney rendered ineffective assistance of counsel under the Sixth Amendment by failing to advise him that deportation was a mandatory consequence of his plea, or at least that mandatory deportation was probable and not just possible.

To establish prejudice, a petitioner must show that his attorney's deficient performance was so serious that

it deprived him of his fundamental right to the due process of law, Strickland, 466 U.S. at 687, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694. In the guilty plea context, specifically, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. But in "a case like this - where a criminal defendant risks deportation by pleading guilty and his counsel fails to so advise him - Hill does not encompass all the methods of satisfying Strickland's prejudice prong." Rodriguez-Penton v. United States, 905 F.3d 481, 489 (6th Cir 2018).

In addition to the ways that a petitioner can demonstrate prejudice under Hill, he can establish prejudice by showing that, "had he known about the risk of adverse immigration consequences. he would have bargained for a more favorable plea." i.e., one "that d[oes] not carry adverse immigration consequences." Id at 488 (citation omitted). A petitioner "may make this showing in any number of ways, such as by showing similar plea agreements that were reached by others charged with the same crime." Id at 489 (citing United States v. Rodriguez-Vega, 797 F.3d 781, 788 (9th Cir 2015)); see Rodriguez-Vega, 797 F.3d at 788 ("A petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or substantially similar crime to plead guilty to a non-removable offense.").

Petitioner can also show that he was prejudiced by his Counsel's deficient performance based on the Supreme Court's decision in Lee v. United States 582 U.S. 357, 137 S.Ct. 1958 (2017). In Lee, the Supreme Court held that counsel deficient performance led not to a "judicial proceeding of disputed reliability," but rather to the forfeiture of an entire proceeding to which Lee had a right. Id. at 1965 (citations omitted). While Lee's prospects of acquittal were grim, the Court nonetheless found credible Lee's position that, had he known he would be deported upon conviction, he would have rejected the plea in favor of trial. id at 1968. The Court explained:

> But for his attorney's incompetence, Lee would have known that accepting
> the plea agreement would certainly lead to deportation, Going to trial?

> Almost certainly. If deportation were the "determinative issue" for an
> individual in plea discussions, as it was for Lee, if that individual had
> strong connections to this country and no other, as did Lee; and if the
> consequences of taking a chance at trial were not markedly harsher than
> pleading, as in this case, that "almost" could make all the difference.

Lee, Id at 1968-69. The Supreme Court framed the dispositive question as not how a hypothetical trial would

have played out, but rather whether absent the error and with proper advice there was a reasonable probability

that the defendant would have rejected the plea deal. Id

Lee is both analogous and distinguishable from petitioner's case. The record in Lee unequivocally supported

a finding that Lee would not have pleaded guilty had he known that his conviction would result in his

deportation. Unlike Lee, petitioner's immigration status was not a determinative issue for him during plea

negotiations. However, his attorney failed to advise him that a guilty plea would subject him to deportation

and the topic never came up during the discussions with the government. Petitioner was likewise not informed

of the potential immigration consequences by the plea agreement or by the court during the plea colloquy.

Petitioner had no need to articulate the importance of his status (as a citizen or otherwise), if he believed

that losing it was not an issue.

Like Lee, petitioner came to the United States as a boy. At the time of his guilty plea, he had maintained

lawful status in the United States for nearly two decades, has three minor children and a wife, who are

United States citizens, and had no ties to Somalia. The welfare of his family was his "superordinate concern"

during plea negotiations, and ensuring that he can serve least amount of time and go back to support his

family was the primary impetus in reaching a deal. Notwithstanding the overwhelming evidence against

petitioner, had he known that his guilty plea would result in deportation, he rationally might have thought

the chance of remaining with his family in the United States worth the risk of a longer jail sentence.

Tellingly, even without the risk of deportation on the table, petitioner often wavered on his decision to

plead guilty.

Also determinative is the fact that neither petitioner's counsel, nor the government brought petitioner

immigration status into the plea bargaining process despite the fact that his right to remain in the United

States may have been more significant to him than any potential jail sentence. See United States v. Orocio, 645 F.3d 630, 645 (3rd Cir 2011). The extent of petitioner's criminal conduct provided the basis for the attempt charges, and both sides has strong incentive to reach a deal - the government to have a closure of the case and petitioner to have a reduced sentence. Had the parties considered the deportation consequences of a particular offense, they may have been able to creatively craft a deal that reduced the likelihood of deportation. See Padilla, 559 U.S. at 376. Indeed, they reached a deal for an offense that automatically triggers the removal consequence without alerting petitioner to its implications, and failed to include a deportation clause in the plea agreement.

As the Supreme Court has emphasized on more than one occasion, "deportation is a drastic measure and at times the equivalent of banishment or exile. Delgadillo v. Carmichael, 332 U.S. 388, 391 (1947) (the stakes are indeed high and momentous for an alien who has acquired his residence here.); Okoroha v. INS, 715 F.3d 380, 382 (8th Cir 1983) ("We are mindful that deportation is a harsh remedy.").

When mandatory deportation is a consequence of a guilty plea, the Supreme Court has endorsed the use of multiple factors to aid in ascertaining whether the defendant has demonstrated a reasonable probability that he would have chosen trial over a guilty plea. In Lee, the Supreme Court addressed an attorney's deficient performance that is comparable to the deficient performance in petitioner's case: "but for his attorney's incompetence, [petitioner] would have known that accepting the plea agreement would CERTAINLY lead to deportation." Id at 371 (emphasis added).

In determining whether the defendant has suffered prejudice from his attorney's ineffectiveness, the Supreme Court had to decide whether he could demonstrate a reasonable probability that, if his attorney had probably advised him about the certainty of deportation, he would have opted for trial. Id at 365, 369-71. The Supreme Court held that the defendant had "adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation," id at 369, and it identified four considerations that were relevant to its holding and that were "backed by substantial and uncontroverted evidence" in the record, id at 371: (1) whether the defendant is likely to succeed at trial, id at 368,

(2) whether the defendant placed "paramount importance . . . on avoiding deportation," Id. at 370,

(3) whether the defendant has "strong connections" to the United States and "no other" country, id at 371,

and (4) whether a guilty verdict at trial would have had "markedly harsher" consequences for the defendant

than a guilty plea. Id.

At the time of his plea hearing, petitioner had lived in the United States with his extended family, all of

whom came to the United States with grants of asylum. There is no indication of his ties to another country.

At sentencing, his counsel noted placement close to his family, due to travel difficulties. Based on all the

factors and sufficient evidence, prejudice is to be presumed. See Lee, 137 S.Ct. at 1968-69 (defendant

demonstrated prejudice from counsel's misadvice "he would not be deported if he pleaded guilty" where

"deportation [was] the 'determinative issue' . . . in plea discussions," he "had strong connections to this

country and no other," and "the consequences of taking a chance at trial were not markedly harsher than

pleading").

In Abraham v. United States, 699 F.3d 1050 (8th Cir 2012), the defendant could not show prejudice when

"the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant]

confirmed that he had read the PSR, discussed it with his counsel, and understood it, and [the defendant]

never moved to withdraw his guilty plea." Abraham, 699 F.3d at 1053 (alterations in original). Abraham is

distinguishable. There, the defendant claimed that counsel failed to "advise him that the offense 'virtually

ensured' deportation." Id. Because the PSR remedied any failure by "clearly indicat[ing] his offense rendered

him deportable," there was no reasonable probability that the result of the proceeding would have been

different if counsel had "advised him of the immigration consequences of pleading guilty." See Id., citing

Padilla, 559 U.S. at 366.

Here, unlike Abraham, petitioner's counsel not only failed to advise the deportation consequences, the PSR's

assertion that petitioner is a naturalized citizen did not remedy any failure to advise. Relying of counsel's

advise, petitioner could have reasonably believed that there were no immigration consequences to his guilty

plea. This deficient performance resulted in prejudice to petitioner as he pled guilty to an aggravated felony

under the INA and now faces mandatory removal. See Doe v. United States, 915 F.3d 905, 911 (2nd Cir 2019)

(recognizing prejudice if petitioner can show reasonable probability that petitioner could have negotiated a

plea that did not impact immigration status); Rodriguez-Penton v. United States, 905 F.3d 481 (6th Cir 2018)

(holding that petitioner "may demonstrate prejudice if he can show that, had he known about the risk of

adverse immigration consequences, he would have bargained for a more favorable plea); United States v.

Swaby, 855 F.3d 233, 243 (4th Cir 2017) ("[petitioner] has demonstrated a reasonable likelihood that, but

for his counsel's erroneous advice, he could have negotiated a different plea agreement. As a result,

[counsel's] deficient performance prejudiced [petitioner's] defense"); cf., DeBartolo v. United States, 790

F.3d 775, 779 (7th Cir 2015) (explaining that petitioner "could have tried to negotiate a different pela deal

for an offense that [did] not make deportation mandatory").

GROUND 2

INEFFECTIVE ASSISTANCE OF COUNSEL:
Counsel failed to Investigate the Immigration status

To establish deficient performance, a petitioner must demonstrate that his attorney, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. Strickland, 466 U.S. at 687. An attorney's failure to advise his client, "whether citizen or not," that his guilty plea carries a risk of deportation is objectively unreasonable and constitutes deficient performance. Padilla, 559 U.S. at 374. This objectively unreasonable conduct occurs when an attorney "either fails to mention the risk of deportation or specifically discounts such a risk." Rodriguez-Penton v. United States, 905 F.3d 481, 487 (6th Cir 2018).

Although "it is quintessentially the duty of counsel to provide [a] client with available advise about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the Strickland analysis,'" Padilla, 559 U.S. at 371 (quotation omitted), this duty is not without demarcations, and the scope of this duty begins with the INA's text. When the text is clear - that is when an attorney can determine "simply from reading the text of the statute" that a client's plea to a particular offense will carry deportation as a consequence - the "duty to give correct advice is equally clear." Id at 369. When a guilty plea carries deportation as a mandatory consequence, an attorney has a duty to advise his client that deportation is in fact mandatory, but when a guilty plea does not carry deportation as a mandatory consequence, or when deportation is uncertain, an attorney has a duty to advise his client only that deportation is a possible risk. Padilla, 559 U.S. at 368-69.

"An attorney's ignorance of a point of law that is fundamental to his case," especially in a complex area like immigration law, does not by itself create a claim of ineffective assistance of counsel, but "COMBINED with is failure to perform basic research on that point," is "a quintessential example or unreasonable performance under Strickland." Hinton v. Alabama, 571 U.S. 263, 274 (2014) (emphasis added); see Osagiede v. United States, 543 F.3d 399, 409 (7th Cir 2008) ("All lawyers that represent criminal defendants are expected to

know the laws applicable to their client's defense," and when "simple computer research would have turned" up those laws, counsel is ineffective for failing to rely on them absent a strategic justification. (quotation omitted)); see also, United States v. Carthorne, 878 F.3d 458, 469 (4th Cir 2017) ("The presumption [of effective assistance of counsel] is defeated when counsel fails 'to do basic legal research.'" (quotation omitted)).

In Petitioner's case, counsel failed to conduct any research whether petitioner obtained derivative citizenship status in advance of his guilty plea. Without such an investigation or reasonable inquiry, defense counsel's duties under Padilla was deficient. Moreover, counsel could not give any advice about immigration consequences, as required under Padilla, if he has not also investigated whether petitioner obtained derivative citizenship. 559 U.S. at 374. In this circumstance, advice regarding "risk of deportation" - about which Padilla requires reasonably clear guidance - necessarily includes consideration of a defendant's citizenship status. Id. (holding Strickland applies to "advice regarding deportation"); id at 366-67 (citing professional norms detailing counsel's duty to inquire about and verify client's citizenship status and give clear warning about actual immigration consequences).

On the record presented in petitioner's case, the court can conclude that counsel failed to conduct any inquiry as to the immigration status of the petitioner and further failed to clearly and succinctly communicate to petitioner any advice that he may have gathered after his inquiry. Counsel was informed, and the Court itself commented, that petitioner was born in Somalia and came to the United States through Kenya (see Doc. No. 80; Plea Transcript at 6). Yet, counsel never reviewed with petitioner's mother about her naturalization or about the derivative citizenship obtained by petitioner before his eighteenth birthday.

Under the highly unusual facts of this case, when petitioner pleaded guilty, he labored under a very significant mistake of fact: he believed that he was a United States naturalized citizen. It is undisputed that petitioner came to the United States as a young child and his mother obtained U.S. citizenship for all her children. Petitioner believed that he is a United States citizen as all his other siblings, who were successfully granted citizenship applications. Indeed, the probation department noted in the PSR that petitioner was indeed a naturalized United States citizen. See PSR Page 3; petitioner identified as naturalized citizen.

Because petitioner had this mistaken belief, this Court can find that at the time that petitioner pleaded guilty, he did not understand the immigration consequences he faced upon conviction. Additionally, the fact that the Court and the plea agreement did not inform him that he could face deportation and other immigration consequences added to the misunderstanding. Where petitioner has an honest and reasonable belief that he is a U.S. citizen, any such warnings - even if they were given - would not have put him on notice that he could face deportation upon conviction, much less that based on the charged crimes, he actually faced an effective certainty that he will be deported after conviction. See Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993)( stating that "the purpose of 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision . . . .").

The government may argue that the defense counsel acted objectively reasonably because he had no reason to doubt petitioner's belief that he was a United States citizen and therefore had no reason to warn him of immigration consequences of a guilty plea. However, that argument would be dubious because the counsel was aware that petitioner was not born in the United States (and the Court's comments at plea hearing further confirmed that awareness), and thus could have an immigration history. Given that knowledge and the fact that petitioner was pleading guilty to an offense that would certainly result in his deportation, and where counsel likely could have discovered petitioner's immigration status without significant difficulty, there is a no question whether counsel's failure to inquire was deficient.

Thus, this court can conclude that the failure to investigate and verify a foreign-born defendant's immigration status was deficient performance under the circumstances presented in the case. This court can find that this failure to investigate resulted in counsel's advise to plead guilty to a automatically deportable offense and constituted ineffective assistance.

GROUND 3

INEFFECTIVE ASSISTANCE OF COUNSEL

Counsel failed to correct the improper plea proceedings under Federal Rule of Criminal Procedure 11

Rule 11 of the Federal Rules of Criminal Procedure establishes the procedures for acceptance of a defendant's guilty plea, and requires that:

> "Before accepting a plea of guilty or nolo contendere, the court MUST ADDRESS the defendant PERSONALLY in open court and inform him of, and determine that understands, the following:
>
> (1) the nature of the charge to which the plea is offered ...

Fed. R. Crim. P. 11 (emphasis added).

Thus Rule 11 specifically requires a trial judge to address the defendant personally, in open court, to determine whether the defendant understands, among other things, "the nature of the charge to which the plea is offered." The Supreme Court had held that noncompliance with the Rule 11 safeguards requires that the defendant's guilty plea be set aside and a new hearing be held at which the defendant may plead anew." McCarthy v. United States, 394 U.S. 459, 472 (1969). This policy ensures that the defendant receives the benefits of the procedural safe-guards contained in Rule 11 and "reduce[s] the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original records is inadequate." Id.

In petitioner's case, the mandate of Rule 11 was violated by the delegation of the court's responsibility to the Assistant U.S. Attorney. The plea transcripts reveal that the Court informed the petitioner that the prosecutor (Mr. Stienkamp) will ask the questions about the factual basis, and then asked the prosecutor to establish the factual basis for the two counts. (See Docket No: 80, pages 24-24). This examination resulted in a proceeding resembling a medieval inquisition, where the adversary was allowed to establish the factual basis based on the answers provided by the defendant. (Plea. Tr. Pages 25-30).

For example, the prosecutor had the burden to prove the "interstate commerce" element of the offense, for which he asked the petitioner: "Would you agree that that's true, that these companies that they probably deal with have interstate connections?," to which petitioner responded: "True." (Plea Tr. at 28). As to any knowledge and voluntariness of the offense, the prosecutor asked:

> Q. But you're not claiming that you were so intoxicated that you didn't know
>    what you were doing, correct?
> A. I was intoxicated.
> Q. You were?
> A. Yes
> Q. But it didn't interfere with our ability to know right from wrong or whatever.
>    You knew what you were doing.
> A. It probably did, to be honest, because if I was not under the influence,
>    I would not have done what I did.

(Plea Tr. at 29-30).

Petitioner's case is thus analogous to United States v. McCarthy, 394 U.S. 459 (1969), where there was no inquiry by the court into defendant's understanding of the nature of the charges, and to United States v. Crook, 526 F.2d 708 (5th Cir 1976) (per curiam), where the court abdicated to the prosecutor the responsibility for giving the Rule 11 warnings.

The Conference Committee Notes to Rule 11(a), 1983 amendment, cite both of the above cases as illustrative instances where there would NOT be a harmless error. The Conference committee notes:

> "where as in McCarthy, there has been absolutely no inquiry by the judge into
> defendant's understanding of the nature of the charge and the harmless error
> claim of the government rests upon nothing more than the assertion that it
> may be "assumed" defendant possessed such understanding merely because
> he expressed a desire to plead guilty [;] . . . [or where] the trial judge totally
> abdicated to the prosecutor the responsibility for giving to the defendant the
> various Rule 11 warnings, as this "results in the creation of an atmosphere of
> subtle coercion that clearly contravenes the policy behind Rule 11."

The 1966 revision of Rule 11, made it the personal duty of the court to question a defendant on the factual basis and voluntariness of the plea. As explained by the Supreme Court in McCarthy, this requirement serves a dual purpose:

> "By personally interrogating the defendant, not only will the judge be better able
> to ascertain the plea's voluntariness, but he also will develop a more complete

record to support his determination in a subsequent post-conviction attack."

Id 394 U.S. at 466.

While McCarthy v. United States was decided before Rule 11(h) amendment, providing for harmless error, the Conference Committee on Rule 11(h), 1983 amendment, provided that "subdivision (h) makes NO CHANGE in the responsibilities of the judge at Rule 11 proceedings." (emphasis added). see also, United States v. Pierce, 893 F.2d 669, 679 (5th Cir. 1990) (district court's complete failure to address Rule 11 core requirement ordinarily requires reversal and will not be treated as harmless error); United States v. Gonzalez, 820 F.2d 575, 579-80 (2nd Cir 1987) (per curiam) (district judge's failure to make any Rule 11(d) inquiry not of kind Conference Committee on Rules considered might constitute harmless error; guilty plea vacated).

In United States v. Crook, the Fifth Circuit read "the language of Rule 11 requiring the court to PERSONALLY ADDRESS the defendant to mean EXACTLY what it says." Crook, 526 F.2d at 710 (emphasis supplied). In Crook, the statements and inquiries that Rule 11 required the court to make were instead made by the prosecutor in the judge's presence. The Fifth Circuit reversed the conviction, reasoning that the "language of Rule 11 commands the court to personally address the defendant. The Supreme Court has strictly construed this language in McCarthy v. United States." Id at 709 (citation omitted). The purpose of Rule 11 is to make the validity of the plea dependent on the completeness of the record as developed by the court and not by the prosecutor. See United States v. Narisi, 538 F.2d 1213 (5th Cir 1976) (Citing United States v. Crook); United States v. Aldrige, 553 F.2d 922 (5th Cir 1977).

The government may argue that Crook is distinguishable on the ground that in Crook, the trial judge did not even personally ask the defendant whether he understood the prosecutor's remarks and waived his rights, as the trial judge did in petitioner's case. The explicit language of Rule 11, however, makes no such distinction. The rule states that the court must both personally inform the defendant of the charges against him, his rights, and the consequences of his plea and personally determine that the defendant understands these charges and the factual basis. See United States v. Narisi, supra.

Moreover, as explained in Crook, "allowing the prosecutor to make the required inquiries of the defendant results in the creation of an atmosphere of subtle coercion that clearly contravenes the policy behind Rule 11." Id, Crook, 526 F.2d at 710. This rationale is equally applicable in petitioner's case, where the prosecutor engaged in cross-examination of the defendant as to the factual basis and the nature of the charges against him. Courts have universally reversed the convictions of defendants and remanded for the entry of a new plea in cases where the courts did not personally address the defendant as required by Rule 11. See, e.g., Harvey v. United States, 850 F.2d 388 (8th Cir 1988) (Rule 11 violation where the district judge did not read indictment to defendants though each said he had read it and one said he understood charges against him; court should have explained charges instead of relying on counsel to do so); United States v. Bernal, 861 F.2d 434, 437 (5th Cir 1988) (same; even if in presence of court defendant reads plea agreement containing nature of charges); Mack v. United States, 635 F.2d 20, 26 (1st Cir 1980) (same; where court depended on private reading of indictment by defendant and counsel, and accepted counsel's statement that defendant appreciated the meaning of plea); United States v. Coronado, 554 F.2d 166, 172-73 & n.11 (5th Cir 1977) (Rule 11 and McCarthy v. United States requires the district court to address defendant personally).

Thus, under the established principles, petitioner was undeniably prejudiced by the counsel failure to object to the prosecutor's cross-examination of petitioner and the court's delegation of its duty to the prosecutor and failure to comply with the specific mandates of Rule 11. This error resulted in a coercive atmosphere leading to involuntary plea, where any harmless error inquiry cannot be applied. Petitioner requests that his plea be vacated and a new hearing be conducted.

## VI. CONCLUSION

Based on the foregoing, petitioner respectfully submits that he was not only denied the effective assistance of counsel during a critical phase of litigation, but he was also unadvised by both the plea agreement and this court of the implications of his plea. Had petitioner known that he faced deportation, he rationally could have been more concerned about banishment from the United States than the possibility of additional jail time for criminal charges. Under the circumstances based on severity of deportation, petitioner respectfully requests that his guilty plea be vacated and petitioner be placed in pre-trial proceedings.

Respectfully Submitted,

Date: September 21, 2025

Abdiweli Mohamed Jama, pro se
Reg. No.: 31380-509
FCI Allenwood Low, P.O. Box 1000
White Deer, PA 17887