UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-31 (ADM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ABDIWEIL MOHHAMED JAMA,
    Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

The United States of America, by its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Katharine T. Buzicky, Assistant United States Attorney, submits this response in opposition to Abdiweli Jama's motion to vacate his sentence. Doc. No. 129. His new allegation of ineffective assistance of counsel lacks merit and should be denied.

## Procedural Background

### I. Jama's Offense Conduct

In November 2020, Jama, armed with a .40 caliber pistol, attempted to rob the Market Barbecue restaurant in Minneapolis. PSR ¶ 8. Employee B.K. lunged at Jama and tried to take the gun from him. *Id*. During the ensuing struggle, B.K. was shot in his knee and shoulder. *Id*. Police recovered Jama's pistol, shell casings, and other evidence at the scene. PSR ¶ 10. DNA testing positively identified Jama's DNA on the pistol and two other items. PSR ¶ 11.

Two days after the Market Bar-B-Que incident, Wright County Sheriff's

deputies responded to a robbery of a Speedway gas station. PSR ¶ 12. The suspect stole $218 from the store, as well as cigarettes and lottery tickets. *Id*. The deputies quickly identified Jama's car and attempted to stop it, but Jama sped away. PSR ¶ 13. When the deputies caught up with Jama, they found the stolen cash and merchandise in his car. *Id*.

## II. Charges, Guilty Plea, and Sentencing

A grand jury charged Jama with two counts of Attempted Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and one count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii)-(iii). Doc. No. 1.

The bond reports prepared for Jama's initial appearance and detention hearing both listed him as a lawful permanent resident. *See* Doc. Nos. 12, 17. Jama had appointed counsel for those two hearings, but eventually hired his own attorney, Adrian LaFavor-Montez, to represent him. Doc. Nos. 14, 29.

While litigating pretrial motions, LaFavor-Montez also negotiated a plea agreement with the government. *See* Doc. No. 103 at 3-7. The negotiations involved multiple drafts, and efforts to work with the Court and government about the timing of trial to allow Jama enough time to consider his options. *Id*. All told, Jama spent about five months deciding whether to plead guilty or

proceed to trial, as the attorneys exchanged various proposals and drafts of plea agreements. *Id*.

Eventually, Jama pleaded guilty to Attempted Interference with Commerce by Robbery (Count 1) and Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence (Count 2), for his attempted robbery of the Market Barbecue. Doc. No. 54 at 1. Despite Jama's status as a lawful permanent resident, the plea agreement did not contain language setting forth the possible immigration consequences of a criminal conviction. *See* Doc. No. 54.

Jama appeared for his change-of-plea hearing in November 2021. Doc. No. 52. During the hearing, the Court acknowledged Jama was born in Somalia and lived in a Kenyan refugee camp, but his immigration status did not come up at the hearing. Doc. No. 80 (Plea Hr'g Tr.) at 6.

The probation officer prepared a PSR following the change-of-plea hearing. The PSR described Jama as a naturalized United States citizen. PSR at F.2.

The parties submitted their sentencing positions in March 2022. LaFavor-Montez argued for a 120-month prison sentence and the government sought a 144-month term. Doc. Nos. 63, 64. LaFavor-Montez described Jama's childhood and journey to this country in his pleading, but did not mention Jama's immigration status. Doc. No. 63 at 3-4.

3

Jama appeared for sentencing the next month. Doc. No 68. The Court imposed a 144-month sentence, to be followed by five years of supervised release. *Id.* at 2-3.

### III. Appeal and Post-conviction Proceedings

Jama appealed, challenging the reasonableness of his sentence. The Eighth Circuit affirmed. *United States v. Jama*, 2023 WL 3090634 (8th Cir. Apr. 26, 2023).

Jama next filed a motion under 28 U.S.C. § 2255, making various allegations of ineffective assistance of counsel against LaFavor-Montez. Doc. No. 84. The government opposed his claims but notified that Court that the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022) impacted the validity of Jama's conviction under § 924(c)(1)(A)(ii)-(iii). *See* Doc. Nos. 101, 102. The Court denied Jama's pro se motion but vacated his conviction on Count 2 pursuant to *Taylor* and ordered that he be resentenced. Doc. No. 110.

Resentencing took place in December 2024. The Court imposed an 88-month sentence on Count 1, to be followed by three years of supervised release. Doc. No. 125. Jama did not appeal.

## IV. The Instant Motion

Jama has now filed a timely motion under § 2255. Doc. No. 129.[1] He argues that LaFavor-Montez "did not provide any advice as to the deportation consequence of [Jama's] plea to an aggravated felony," and therefore "rendered ineffective assistance of counsel under the Sixth Amendment by failing to advise him that deportation was a mandatory consequence of [Jama's] plea, or at least that mandatory deportation was probable and not just possible." Doc. No. 130 at 8.

LaFavor-Montez submitted an affidavit and two exhibits in response to Jama's allegation. In the affidavit, LaFavor-Montez states that he met with Jama via Zoom on August 26, 2021. Gov't Ex. 1. (LaFavor-Montez Aff.) at 2. In that conversation, LaFavor-Montez and Jama "discussed [Jama's] immigration status" and "Jama indicated to [LaFavor-Montez] that he was a lawful permanent resident" of the United States. *Id*. LaFavor-Montez ensured Jama knew that LaFavor-Montez "was not an immigration attorney, but [he] could say very confidently that a conviction of the crimes [Jama] was charged with would almost certainly result in [Jama's] removal from" the United States. *Id*. In response, "Jama acknowledged he was aware" of the immigration

---

[1] The government agrees that Jama's new motion is not a second or successive motion under § 2255, because Jama filed it following his 2024 resentencing. *See Dyab v. United States*, 855 F.3d 919, 923 (8th Cir. 2017).

5

consequences he faced, and "even joked that he would prefer to be deported before resolution of this case." *Id*. LaFavor-Montez advised Jama that "if he had any further questions about this issue, he should consult an immigration attorney." *Id*.

LaFavor-Montez also informed the PSR writer of Jama's immigration status. *Id*. LaFavor-Montez submitted a contemporaneous letter to Jama and an email showing his efforts to correct the PSR's recitation of Jama's immigration status. *See* Gov't Exs. 2, 3. However, the PSR was not corrected. *See* PSR F.2.

## LEGAL FRAMEWORK

To prevail on a motion filed under 28 U.S.C. § 2255, a prisoner must show that his challenge raises a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States,* 417 U.S. 333, 346 (1974) (quotation omitted); *see also United States v. Apfel,* 97 F.3d 1074, 1076 (8th Cir. 1996). Thus, § 2255 "does not encompass all claimed errors in conviction and sentencing," but only "jurisdictional and constitutional errors." *Sun Bear v. United States,* 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *United States v. Addonizio,* 442 U.S. 178, 185 (1979)). Beyond that, its scope is "severely limited." *Id.*

## I. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are typically cognizable under § 2255. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). The standard that a defendant must meet to show ineffective assistance of counsel sets a high bar, *e.g.*, *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020), and "is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). Errors alone do not meet the ineffective-assistance standard because the Sixth Amendment "does not require perfect trial performance; it requires only competence." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995).

Courts have explained that the ineffective-assistance standard is "a most deferential one" that must be applied "with scrupulous care." *Harrington*, 562 U.S. at 105. It is "all too tempting to second-guess counsel's assistance after conviction or adverse sentence." *Id.* (internal quotation marks and citation omitted). The question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To establish an ineffective-assistance claim, defendant must prove two separate prongs, often referred to as the *Strickland* test. Failure to establish either component – deficient performance or prejudice – is fatal to a claim of ineffective assistance. *Worthington v. Roper*,

631 F.3d 487, 498 (8th Cir. 2011) (citing *Strickland*, 466 U.S. at 697). Courts do not have to evaluate both prongs of the *Strickland* test if defendant fails to establish one. *Deroo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

### A. Performance Prong

To prevail on an ineffective-assistance claim, a defendant must first show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *Love*, 949 F.3d at 410. Defendants "cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted). "An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013). Instead, the reasonableness of counsel's conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690.

Furthermore, the test of whether counsel's performance was deficient does "not . . . consider the attorney error in isolation, but instead . . . assess[es] how the error fits into the big picture of what happened at trial." *Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) (internal quotation marks and citation omitted); *see also Davis v. United States*, 858 F.3d 529, 534 (8th

8

Cir. 2017) (fair assessment requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). Judicial scrutiny of counsel's performance is "highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689; *Harrington*, 562 U.S. at 104. Since there are "countless ways to provide effective assistance in any given case," strategic choices as to how to defend a case are "virtually unchallengeable." *Strickland*, 466 U.S. at 689-90; *see also Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985) ("[A]n ineffective assistance of counsel claim cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident.").

To state an actionable claim for post-conviction relief, a defendant "must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice." *Wiggins v. Lockhart,* 825 F.2d 1237, 1238 (8th Cir. 1987). A motion fails if it does not set forth "sufficient allegations of facts which, if true, would justify relief." *See Smith v. United States,* 635 F.2d 693, 696 (8th Cir. 1980). "Merely stating unsupported conclusions will not suffice." *Woods v. United States,* 567 F.2d 861, 863 (8th Cir. 1978).

## B. Prejudice Prong

Second, a defendant must prove actual prejudice. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Deprivation of a fair trial means that the defendant "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see, e.g.*, *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011).

A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted). It is "not enough" to show that counsel's errors had *some* conceivable effect on the outcome; rather, counsel's errors "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland*, 466 U.S. at 687). Only when the likelihood of a different outcome is "substantial, not just conceivable," has the defendant met *Strickland*'s demanding standards. *Stewart v. Kelley*, 890 F.3d 1124, 1128 (8th Cir. 2018) (quoting *Harrington*).

**Argument**

I. **LaFavor-Montez Advised Jama of the Immigration Consequences of Jama's Guilty Plea.**

Jama now claims that LaFavor-Montez did not advise him of the immigration consequences of a guilty plea. When attorneys represent non-citizens in criminal cases, they must provide affirmative, competent advice regarding immigration consequences, including the likelihood of deportation following a conviction. *Padilla v. Kentucky*, 559 U.S. 356, 365-66 (2010). Counsel must offer accurate information about the nature of risk the defendant faces. Where the deportation consequence is "truly clear," the attorney must provide equally clear and correct advice concerning deportation. *Id.* at 369.

Jama's original offenses of conviction both rendered him deportable.[2] *See* § 1227(a)(2)(C); *Dat v. United States* (*Dat II*), 983 F.3d 1045, 1046-47 (8th Cir. 2020) (explaining 18 U.S.C. § 1951 is an aggravated felony). Under these circumstances, LaFavor-Montez's duty was to give Jama clear advice "that 'his conviction[s] would make him 'deportable' under 8 U.S.C. § 1227(a)(2)(B)(I) if he pleaded guilty, not that deportation or removal was either mandatory or certain.'" *Dat II*, 983 F.3d at 1048 (quoting *United States v. Ramirez-Jimenez*,

---

[2] Title 8 U.S.C. § 1227 outlines offenses for which a noncitizen may be deported. Convictions for firearms offenses and aggravated felonies render a non-citizen deportable. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), (a)(2)(C).

11

907 F.3d 1091, 1094 (8th Cir. 2018) (per curiam)). LaFavor-Montez did more than *Dat II* requires, because he advised Jama in August 2021 that "a conviction of the crimes he was charged with would almost certainly result in his removal from the country." LaFavor-Montez Aff. at 2. LaFavor-Montez's Affidavit makes clear Jama knew a conviction could have adverse immigration consequences when he pleaded guilty in November 2021. *Id*. There was no deficient performance here.

Nor can Jama prove prejudice. When a defendant makes a *Padilla* claim, he "can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 582 U.S. 357, 364-65 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A defendant need not prove that the trial would have resulted in a more favorable outcome, only that he would have rejected the plea agreement and "[held] on to some chance of avoiding deportation" through a possible acquittal at trial. *Id*. at 371.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee* at 369. A

defendant must come forward with "credible evidence" that he would have proceeded to trial. *York v. Lockhart*, 856 F.2d 61, 64 (8th Cir. 1988).

Jama cannot meet his burden. First, he acknowledges that, unlike the defendant in *Lee*, his "immigration status was not a determinative issue for him during plea negotiations." Doc. No. No. 130 at 10. Still, he asks the Court to infer prejudice, positing that "he rationally *might* have thought the chance of remaining in the United States [was] worth the risk of a longer jail sentence" and "his right to remain in the United States *may* have been more significant to him than any potential jail sentence." *Id.* at 10, 11 (emphasis added). Such speculative statements are insufficient. Because Jama does not assert he *would* have rejected a plea agreement and proceeded to trial, he cannot establish prejudice.

Jama attempts to bolster his arguments on both *Strickland* prongs by pointing to the absence of immigration information in the plea agreement and PSR. Doc. No. 130 at 10-11, 12-13. While it is unfortunate that the plea agreement did not contain an immigration-consequences clause and PSR incorrectly stated he is a citizen, those facts do not change the result here. The issue before the Court is whether LaFavor-Montez fulfilled his duty under *Padilla* to advise Jama about the risk of deportation. Because he did, and because Jama does not allege he would have proceeded to trial, the Court should deny his motion.

## II. An Evidentiary Hearing Is Neither Necessary nor Warranted in This Case.

The government acknowledges that a claim like Jama's may require an evidentiary hearing to resolve factual issues. *See Dat v. United States* (*Dat I*), 920 F.3d 1192, 1196 (8th Cir. 2019). However, the government believes Jama's claim can be resolved without a hearing because he does not allege he would have proceeded to trial. Because the issue of prejudice is not contested, the Court can deny Jama's motion with further proceedings. If the Court nevertheless orders a hearing, the government requests that it be set at least eight weeks after any order issues so that the undersigned can arrange for Jama's travel.

## III. A Certificate of Appealability Is Not Warranted.

A certificate of appealability should be issued only if a defendant makes a substantial showing of the denial of a constitutional right or raises an issue that is debatable among jurists of reason or deserving of further proceedings. *See* 28 U.S.C. § 2253(c)(2); Rule 22(b) of the Federal Rules of Appellate Procedure; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Tiedeman v. Benson*, 122 F.3d 518, 523 (8th Cir. 1997).

Jama's claim is not debatable among reasonable jurists. The United States respectfully requests this Court not only to deny his motion, but also to deny a certificate of appealability.

## Conclusion

For the forgoing reasons, Jama's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 should be denied.

Dated: November 10, 2025

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Katharine T. Buzicky*

By: KATHARINE T. BUZICKY
Assistant U.S. Attorney
Attorney ID No. 671031MA