UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,
v.

Abdiweli Mohamed Jama,

    Defendant.

MEMORANDUM OPINION
AND ORDER
Criminal No. 21-31 ADM/HB
Civil No. 25-3775 ADM

___

Katharine T. Buzicky, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Abdiweli Mohamed Jama, pro se.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Abdiweli Mohamed Jama's ["Jama"] Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 129].[1]  For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

**A. Jama's Offense Conduct**

In November 2020, Jama, armed with a pistol, attempted to rob the Market Bar-B-Que restaurant in Minneapolis, Minnesota.  Presentence Investigation Report ("PSR") [Docket No. 60] ¶ 8.  An employee lunged at Jama in an attempt to take the gun from him.  Id.  During the struggle over the pistol, the employee was shot in his knee and shoulder.  Id.  Jama fled the store on foot, and the police later recovered the gun, shell casings, and other evidence at the scene.

---

[1] All citations are to the criminal case docket.

Id. ¶ 10.  DNA testing positively identified Jama's DNA on the pistol and two other items.  Id. ¶ 11.

Two days after the Market Bar-B-Que shooting, Wright County Sheriff's deputies responded to a report of a robbery at a Speedway gas station.  Id. ¶ 12.  The suspect stole $218 from the store, as well as cigarettes and lottery tickets.  Id.  The deputies spotted Jama's car nearby and attempted to stop it, but Jama sped away and a high-speed chase ensued.  Id. ¶ 13.  The chase ended when Jama crashed his vehicle a short distance later.  Id.  The deputies found the stolen cash and merchandise in Jama's car.  Id.

**B.  Charges, Guilty Plea, and Sentencing**

In February 2021, Jama was charged by Indictment with two counts of Attempted Interference with Commerce by Robbery in violation of 18 U.S.C. § 1951 ("Hobbs Act Robbery"), and one count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii)-(iii).  Indictment [Docket No. 1].

On February 24, 2021, a bond report was prepared by the U.S. Probation office in advance of Jama's initial appearance.  See Docket No. 12.  The bond report states that Jama was born in Somalia, that he "is a permanent resident," and that "if convicted of a felony offense, he may be amenable to removal proceedings for violations of the Immigration Act."  Id. at 1.  A second bond report was prepared on February 28, 2021, prior to Jama's detention hearing.  See Docket No. 17.  This bond report includes information provided by Jama during a telephonic interview with the Probation Office.  Id. at 1.  Jama related that he came to the United States when he was 12 years old.  Id.  He further stated that he was a minor when his mother became a naturalized citizen, and that he believes that is how he became a permanent resident.  Id. at 2.

Jama was represented by appointed counsel at the initial appearance and detention hearings, but later hired his own attorney, Adrian LaFavor Montez, to represent him. See Docket Nos. 14, 29. LaFavor-Montez litigated pretrial motions on Jama's behalf and negotiated a plea agreement with the Government. First LaFavor-Montez Aff. [Docket No. 103] ¶¶ 12-35. The plea negotiations included several different proposals and multiple drafts of the plea agreement. Id. Jama spent about five months deciding whether to plead guilty or proceed to trial. Id.

In November 2021, Jama entered a plea of guilty to Count 1 (Hobbs Act Robbery) and Count 2 (Discharging a Firearm During and in Relation to a Crime of Violence), for his attempted robbery of the Market Barbecue. Min. Entry [Docket No. 52]; Plea Agreement [Docket No. 54]. Despite Jama's status as a lawful permanent resident, the Plea Agreement did not include language setting forth the possible immigration consequences of a criminal conviction. See Plea Agreement. During the change of plea hearing, the Court acknowledged that Jama was born in Somalia and raised in a Kenyan refugee camp, but Jama's immigration status was not raised or discussed at the hearing. See generally Plea Tr. [Docket No. 80].

In February 2022, the U.S. Probation Office prepared a preliminary Presentence Investigation Report ("Preliminary PSR") [Docket No. 57] that erroneously described Jama as a "Naturalized U.S. Citizen." Preliminary PSR at F.3. LaFavor-Montez emailed the Probation Office to advise that Jama was a permanent resident and not a U.S. citizen. Gov't Resp. [Docket No. 134] Ex. 1 ¶ 10; Gov't Resp. Ex. 3. LaFavor-Montez also sent a letter to Jama to inform him that he had notified the Probation Office of the error. Gov't Resp. Ex. 1¶ 11; Gov't Resp. Ex. 2. The final Presentence Investigation Report ("PSR") [Docket No. 60] was filed in March 2022, but Jama's immigration status was neither corrected nor raised as an issue. See PSR at F.3.

3

On April 7, 2022, Jama appeared for sentencing. Min. Entry [Docket No. 67]; Sentencing J. [Docket No. 68]. At the sentencing hearing, Jama's counsel discussed Jama's difficult childhood, including his time in a refugee camp before arriving in the United States, but his immigration status was not mentioned during the hearing. The Court sentenced Jama to a term of 24 months on Count 1 and the mandatory consecutive term of 120 months on Count 2, for a total sentence of 144 months. Sentencing J. at 2.

### C. Appeal and Post-conviction Proceedings

Jama appealed his sentence, and the Eighth Circuit affirmed. United States v. Jama, 2023 WL 3090634 (8th Cir. Apr. 26, 2023).

In December 2023, Jama moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. See Docket No. 84. He argued that (1) he received ineffective assistance of counsel during the pretrial, sentencing, and appellate phases of his case, and (2) his § 924(c) conviction on Count 2 must be vacated based on United States v. Taylor, 596 U.S. 845 (2022). See Mem. Supp. Mot. [Docket No. 85] at 27-30.[2] Jama's claims of ineffective assistance of counsel did not include the issue that counsel failed to advise him of the deportation consequences of his guilty plea. The Court denied Jama's ineffective assistance of counsel claims, but vacated his Count 2 conviction pursuant to Taylor and ordered that Jama be resentenced on his Count 1 conviction for Hobbs Act robbery.

A resentencing hearing was held in December 2024. Min. Entry [Docket No. 124]. The Court imposed an 88-month sentence on Count 1. Resentencing J. [Docket No. 125]. Jama did not appeal the resentencing.

---

[2] In Taylor, the Supreme Court held that attempted Hobbs Act robbery does not satisfy the elements clause of § 924(c), and thus no longer can serve as a predicate crime of violence for a § 924(c) conviction. Taylor, 596 U.S. at 851-52.

4

**D. Immigration Proceedings**

On July 15, 2025, the Department of Homeland Security served Jama with a Notice to Appear.  See Docket No. 129, Attach. 1.  The Notice alleges that Jama is not a citizen of the United States and is subject to removal pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii) because he was convicted of an aggravated felony.  Id.

**E. Present Motion**

In September 2025, Jama timely filed the instant 2255 motion [Docket No. 129] claiming that he received ineffective assistance of counsel because LaFavor-Montez failed to (1) advise him of the immigration consequences of pleading guilty; (2) investigate Jama's immigration status; and (3) object to alleged deficiencies in the change of plea hearing.[3]

In his opening brief, Jama argues that "had he known that his guilty plea would result in deportation, he rationally might have thought the chance of remaining with his family in the United States [was] worth the risk of a longer jail sentence," and that "his right to remain in the United States may have been more significant to him than any jail sentence."  Mem. Supp. 2255 Mot. [Docket No. 130] at 10-11.  Jama also argues that he "labored under a very significant mistake of fact:  he believed he was a United States naturalized citizen."  Id. at 15.  Jama contends that because he had this "mistaken belief," he "did not understand the immigration consequences he faced upon conviction."  Id. at 16.

---

[3] The parties agree that Jama's new 2255 motion is not a second or successive motion under § 2255, because Jama filed it after his 2024 resentencing and new sentencing judgment.  See Gov't Resp. [Docket No. 134]; Dyab v. United States, 855 F.3d 919, 923 (8th Cir. 2017) (recognizing that when a resentencing results in a new sentence or judgment, a defendant's postconviction motion challenging the new judgment is not a prohibited "second or successive motion" under 28 U.S.C. § 2255(h)).

The Government opposes the motion, arguing that Jama's claims of ineffective assistance of counsel lack merit. LaFavor-Montez has submitted an affidavit in which he avers that he met with Jama via Zoom on August 26, 2021, and during that meeting Jama informed LaFavor-Montez that he was a "lawful permanent resident" of the United States. Gov't Resp. Ex. 1 ¶ 5. LaFavor-Montez told Jama that he "was not an immigration attorney, but [he] could say very confidently that a conviction of the crimes [Jama] was charged with would almost certainly result in [Jama's] removal from" the United States. Id. ¶ 6. Jama acknowledged that he was aware of the immigration consequences he faced, and "joked that he would prefer to be deported before the resolution of this case." Id. ¶ 7. LaFavor-Montez advised Jama that "if he had any further questions about this issue, he should consult an immigration attorney." Id. ¶ 8. LaFavor-Montez's affidavit includes a copy of his email to the Probation Office advising that Jama's immigration status was incorrect in the Preliminary PSR, and his letter to Jama stating that the Probation Office had been informed of the error. Gov't Resp. Exs. 2, 3.

The Government also argues that Jama cannot show he was prejudiced by his attorney's allegedly ineffective assistance because Jama has not asserted that he would have rejected the plea agreement and proceeded to trial.

Jama has submitted a reply [Docket No. 136] and declaration [Docket No. 136, Attach. 1] contradicting the assertions in LaFavor-Montez's affidavit. Jama avers that LaFavor-Montez did not discuss the immigration consequences of pleading guilty, and that their discussions focused on LaFavor-Montez telling Jama that if he did not plead guilty, he could face a prison term of 25 years to life. Reply Ex. A [Docket No. 136, Attach. 1] ¶ 5. Jama states that he had "no idea . . . that there was a realistic possibility that [he] would be deported or deemed inadmissible as the result of such a plea." Id. He further avers that he has lived in the United States since he was 14

6

years old and is completely adapted to American culture, he has been married for 10 years and has three young children who rely on him financially and emotionally, and had he known at the time of his guilty plea that the possibility of deportation or inadmissibility existed he would not have entered the plea and would have instead proceeded to trial.  Id. ¶¶ 2, 4, 8-10.

### III.  DISCUSSION

#### A.  Legal Standards

##### 1.  28 U.S.C. § 2255

Persons in federal custody are provided a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of their sentence under 28 U.S.C. § 2255.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  Walking Eagle v. United States, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

##### 2. Ineffective Assistance of Counsel

"To establish ineffective assistance of counsel within the context of section 2255 . . . a movant faces a heavy burden."  Apfel, 97 F.3d at 1076.  A defendant must show that "(1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance."  Pierce v. United States, 686 F.3d 529, 531 (8th Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

To satisfy the deficient performance prong of this two-part test, a defendant must show that counsel's errors were not the result of a "reasonable professional judgment."  Strickland, 466

U.S. at 690.  In doing so, the defendant runs up against a strong presumption "that counsel . . . rendered adequate assistance."  Id.  To meet the prejudice prong, the defendant must prove, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Where a defendant challenges his guilty plea based on ineffective assistance of counsel, the second part of the test is "slightly modified" in that "the convicted defendant must demonstrate that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

**B. Jama's Claims**

    **1. Failure to Advise of Deportation Consequences (Ground One)**

In Ground One, Jama claims that his attorney failed to advise him of the immigration consequences of a guilty plea.  "[C]riminal defense attorneys have a duty to inform clients about the possible immigration consequences of pleading guilty in order to provide effective counsel under the Sixth Amendment."  Barajas v. United States, 877 F.3d 378, 380 (8th Cir. 2017) (citing Padilla v. Kentucky, 559 U.S. 356, 367 (2010)).  Where the deportation consequence is "truly clear," the attorney's duty to provide correct advice is "equally clear."  Padilla, 559 U.S. at 369.

Jama's original offenses of conviction both rendered him deportable.  See Dat v. United States (Dat II), 983 F.3d 1045, 1046 (8th Cir. 2020) (explaining Hobbs Act robbery is an aggravated felony and a deportable offense under 8 U.S.C. § 1227(a)(2)(A)(iii)); 8 U.S.C. § 1227(a)(2)(C) (stating that a conviction for using or carrying a firearm is a deportable offense). Under these circumstances, LaFavor-Montez's duty was to give Jama clear advice that "his conviction would make him 'deportable' . . . if he pleaded guilty, not that deportation or removal

8

was either mandatory or certain." Dat II, 983 F.3d at 1048 (quoting United States v. Ramirez-Jimenez, 907 F.3d 1091, 1094 (8th Cir. 2018) (per curiam)).

Here, LaFavor-Montez states in an affidavit that he advised Jama in August 2021 that "a conviction of the crimes he was charged with would almost certainly result in his removal from the country." Gov't Resp. Ex. 1 ¶ 6. This advice is sufficient to satisfy LaFavor-Montez's Sixth Amendment duty to advise Jama of the possible deportation consequences of pleading guilty.

Jama argues that LaFavor-Montez's affidavit is false and is not corroborated with other evidence. Jama states in his declaration that during his "limited discussion with Mr. LaFavor-Montez regarding the plea to the charges," they did not discuss the immigration consequences of pleading guilty, and that their discussions focused on LaFavor-Montez telling Jama that if he did not plead guilty, he could face a prison term of 25 years to life. Reply Ex. A [Docket No. 136, Attach. 1] ¶ 5.

Jama's current declaration lacks credibility given the inconsistencies between his assertions in this 2255 Motion and the record in this case. For example, Jama characterizes his discussion with LaFavor-Montez about pleading guilty as "limited," although the record shows that he engaged in numerous discussions with his attorney about the decision to plead guilty, he considered several different proposals and drafts of the plea agreement, and he spent about five months deciding whether to plead guilty or proceed to trial. See First LaFavor-Montez Aff. [Docket No. 103] at ¶¶ 3, 12-35. Additionally, Jama argues in his 2255 Motion that he mistakenly believed at the time he pled guilty that he was a naturalized citizen, but a bond report completed well in advance of his plea shows that Jama discussed with the Probation Officer that he believed he was a permanent resident because of his mother's immigration status. See Docket No. 17 at 2.

Even if Jama could show that LaFavor-Montez's performance was deficient, Jama cannot show prejudice. When a defendant makes a claim under Padilla, he "can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Lee v. United States, 582 U.S. 357, 364–65 (2017) (quoting Hill, 474 U.S. at 59). A defendant need not show that the trial would have resulted in a more favorable outcome, only that he would have chosen to reject the plea agreement so he could "hold[] on to some chance of avoiding deportation." Id. at 371.

"Surmounting Strickland's high bar is never an easy task." Padilla, 559 U.S. at 371. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 582 U.S. at 369. A defendant must come forward with "credible evidence" that he would have proceeded to trial. York v. Lockhart, 856 F.2d 61, 64 (8th Cir. 1988).

Here, Jama expressly acknowledges that his "immigration status was not a determinative issue for him during plea negotiations." Docket No. 130 at 10. Additionally, Jama's post-hoc assertions of prejudice have changed since the Government submitted its brief. In his opening brief, Jama argued that "he rationally might have thought the chance of remaining in the United States [was] worth the risk of a longer jail sentence," and that his right to remain in the United States may have been more significant to him than any potential jail sentence." Docket No. 130 at 10, 11 (emphasis added). Only after the Government correctly pointed out that these speculative statements are not sufficient to show prejudice did Jama assert that he would have rejected a plea agreement and proceeded to trial.

10

On this record, Jama has not surmounted <u>Strickland's</u> high bar, and Count One is dismissed.

### 2. Failure to Investigate Citizenship Status (Ground Two)

In Ground Two, Jama argues that LaFavor-Montez failed to conduct an inquiry into Jama's citizenship status, and that Jama mistakenly believed when he pleaded guilty that he was a U.S. citizen. 2255 Mot. at 15. Jama contends that due to this "mistaken belief . . . he did not understand the immigration consequences he faced upon conviction." <u>Id.</u> at 16.

This argument lacks credibility and is contradicted by the record. The bond report prepared on February 28, 2021 shows that Jama told a Probation Officer during a telephonic interview that he was a permanent resident. <u>See</u> Bond Report [Docket No. 17] at 2 ("[Defendant] was a minor when his mother became a naturalized citizen, and he believes that is how he became a permanent resident."). As such, Jama would have known at the time he entered his guilty plea in November 2021 that he was a permanent resident.

Although Jama notes that the PSR erroneously stated he was a naturalized citizen, the PSR had no bearing on Jama's decision to plead guilty because it was prepared months after Jama's guilty plea. Additionally, LaFavor-Montez's correspondence with the Probation Office and with Jama about the error undermines Jama's allegation that he and/or his lawyer mistakenly believed that Jama was a U.S. Citizen. Accordingly, the record does not support Jama's claim that LaFavor-Montez failed to adequately investigate his immigration status. Ground Two is dismissed.

### 3. Failure to Object to Plea Hearing Proceedings (Ground 3)

In Ground 3, Jama claims that his attorney was deficient for not objecting to alleged deficiencies in the plea hearing proceedings. Jama contends that the plea hearing failed to

comply with Federal Rule of Criminal Procedure Rule 11(b)(1)(G), which requires the Court to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Jama argues that this requirement was not satisfied because during the plea hearing, the Court allowed the prosecutor to establish the factual basis for the two counts to which Jama was pleading.

This claim is rejected because the transcript of the change of plea hearing shows that the Court informed Jama of the nature of each charge to which he pleaded guilty and determined that Jama understood the nature of the charges. The Court personally read each count verbatim from the Indictment before asking Jama for his plea. See Plea Tr. [Docket No. 80] at 23:12-24:18. After the prosecutor examined Jama about the factual basis for the plea, the Court asked Jama additional questions about whether he knowingly and voluntarily committed the crime. Id. at 30:22-31:23. The record amply establishes that the Rule 11 requirements were satisfied, and Jama's counsel was not deficient for not objecting to the plea hearing proceedings. Count Three is dismissed.

## IV.  EVIDENTIARY HEARING

An evidentiary hearing is not warranted, as the 2255 Motion and the files and record in this case conclusively show that Jama is not entitled to § 2255 relief on his claims that he received ineffective assistance of counsel. 28 U.S.C. § 2255(b); Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010).

## V.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised by this § 2255 Motion differently, or that any of the issues raised by Jama's § 2255 Motion would be debatable among reasonable jurists.  Thus, the Court declines to grant a certificate of appealability.

## VI.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Abdiweli Mohamed Jama's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Docket No. 129] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Dated:  November 26, 2025

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE